REVISED – September 7, 2001

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 00-60891

Summary Calendar

---

RUBEN DARIO R. LOPEZ-GOMEZ; TERESA DEL CARMEN GOMEZ-PENATE,

Petitioners,

versus

JOHN ASHCROFT, U.S. Attorney General,

Respondent.

---

Petition for Review of an Order
of the Board of Immigration Appeals

---

September 7, 2001

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:

Petitioners Teresa Del Carmen Gomez-Penate and her son Ruben Dario R. Lopez-Gomez challenge the decision of the Board of Immigration Appeals denying asylum and denying withholding of deportation. Petitioners argue that the BIA erred in placing on them the burden of proof that relocation within their country of nationality was not feasible. Because the BIA did not err, and its decision was supported by substantial evidence, we affirm.

I

Petitioners are both natives and citizens of Guatemala, born in the Department of Jalapa. They were both active in UCN, a centrist political party, until 1990 or 1991. Political violence in Jalapa took a heavy toll on their family. Santiago Raymundo Lopez, husband to Gomez-Penate and father of Lopez-Gomez, was a bodyguard for a UCN congressman. He was shot and killed in 1988. From that time until 1991, Gomez-Penate and Lopez-Gomez received threats telling them to leave Jalapa. The source of these threats appears to be rival political parties; the petitioners do not argue that the government of Guatemala is behind the violence or threats.

Gomez-Penate left Guatemala and entered the United States illegally in 1991. Lopez-Gomez, after several attempts, reached the United States and entered illegally in 1993. After Lopez-Gomez entered the United States, both he and Gomez-Penate were served with Orders to Show Cause charging them with deportability for entering the United States without inspection. They admitted the factual allegations of the charge and conceded deportability. They applied for asylum,[1] withholding of deportation,[2] and voluntary departure.[3]

---

[1] *See* 8 U.S.C. § 1158(a) (1996).

[2] *See* 8 U.S.C. § 1253(h) (1996), *repealed*, Illegal Immigration Reform and Immigrant Responsibility Act of 1996, § 307(a), Pub. L. 104-208, 110 Stat. 3009-612 (Sept. 30, 1996).

[3] *See* 8 U.S.C. § 1254(e) (1996), *repealed*, IIRIRA, § 308(b)(7), Pub. L. 104-208, 110 Stat. 3009-615 (Sept. 30, 1996).

On August 24, 1994, an Immigration Judge denied their applications for asylum and withholding of deportation and granted their applications for voluntary departure. Petitioners appealed to the BIA. On November 20, 2000, the BIA issued an opinion upholding the Immigration Judge's ruling. Petitioners filed a Petition for Review with this court, arguing only that they are eligible for asylum.[4]

## II

In reviewing a decision of the BIA, we review its rulings of law *de novo*,[5] but we will defer to the BIA's interpretation of immigration regulations if the interpretation is reasonable.[6] We review the BIA's findings of fact for substantial evidence.[7] We therefore accept the factual findings of the BIA "unless the evidence is so compelling that no reasonable fact finder could fail to find otherwise."[8]

---

[4] Because the petitioners were placed in deportation proceedings before April 1, 1997, and their final orders of deportation were issued by the BIA on or after October 31, 1996, the transitional rules for judicial review of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 apply. *See* IIRIRA, §§ 306(c)(1), 309(a)-(c), Pub. L. No. 104-208, 110 Stat. 3009-306, 3009-625 (Sept. 30, 1996).

[5] *See Mikhael v. INS*, 115 F.3d 299, 305 (5th Cir. 1997)

[6] *See Faddoul v. INS*, 37 F.3d 185, 188 (5th Cir. 1994); *Mazariegos v. Office of the U.S. Attorney General*, 241 F.3d 1320, 1327 & n.4 (11th Cir. 2001); *see also Shalala v. Guernsey Memorial Hosp.*, 514 U.S. 87, 95 (1995) (deferring to a "reasonable" interpretation of an agency regulation).

[7] *See Faddoul*, 37 F.3d at 188.

[8] *Mikhael*, 115 F.3d at 304.

A grant of asylum may be based on past persecution or on a well-founded fear of persecution in the country of origin[9] on account of race, religion, nationality, membership in a particular social group, or political opinion.  In this case, petitioners argue that they have a well-founded fear of persecution.  To show a well-founded fear of persecution, an alien must have a subjective fear of persecution, and that fear must be objectively reasonable.[10] Upon a showing of a well-founded fear of persecution, the Immigration Judge has discretion to grant asylum.[11]

III

A

In this case, the BIA accepted the petitioners' contention that they had a well-founded fear of persecution in Jalapa.  The BIA concluded, however, that the petitioners' had not established a well-founded fear of persecution in other parts of Guatemala. Consequently, following its own precedents, the BIA held that the possibility of relocation within Guatemala negated the petitioners' claim of a well-founded fear of persecution.

---

[9] *See* 8 C.F.R. § 208.13(b).  We use "country of origin" as shorthand for "country of nationality or last habitual residence."  This term describes the country to which the alien will be deported.  *See* 8 C.F.R. § 208.13(b)(1)-(2) (1999).

[10] *Faddoul*, 37 F.3d at 188.

[11] *See id.*

We consider the version of the applicable regulation, 8 C.F.R. section 208.13, effective before January 5, 2001.[12] This circuit has not yet definitely determined whether the applicant for asylum or the INS bears the burden of proving the possibility of relocation with the alien's country of origin. We have held that "[w]hen a party seeking asylum demonstrates that a national government is the 'persecutor,' the burden should fall upon the INS to show that this government's persecutive actions are truly limited to a clearly delineated and limited locality and situation, so that the applicant for asylum therefore need not fear a likelihood of persecution elsewhere in the nation."[13] Today we hold that, at least for cases where the applicant does not show past persecution, when the applicant for asylum does not demonstrate that a national government is the persecutor, the applicant bears the burden of showing that the persecution is not geographically limited in such a way that relocation within the applicant's country of origin would be unreasonable.

---

[12] 8 C.F.R. § 208.13 (1999). The parties do not dispute that application of the former regulation. The current version of 8 C.F.R. § 208.13 specifies the burdens of proof for showing the reasonableness of relocation for applicants for asylum. Consistent with our interpretation of the prior version, the current version of section 208.13 places the burden of proving that internal relocation is not reasonable on the applicant for asylum when the applicant alleges a well-founded fear of persecution and the persecutor is not the government or government-sponsored. *See* 8 C.F.R. § 208.13(b)(3)(i) (2001). When the persecutor is the government or government-sponsored, the INS bears the burden of proof. *See See* 8 C.F.R. § 208.13(b)(3)(ii) (2001). When the applicant has established past persecution, however, the INS always bears the burden of showing that internal relocation would not be reasonable. *See* 8 C.F.R. § 208.13(b)(1)(ii).

[13] *Abdel-Masieh v. INS*, 73 F.3d 579, 587 (5th Cir. 1996).

The applicable statutes and regulations do not address the possibility of relocation within a country.[14]  The applicable regulation, the version of 8 C.F.R. § 208.13 effective prior to January 5, 2001, does place the burden on the applicant for asylum to establish eligibility for asylum.  Thus, to the extent that inability to relocate within one's country of origin is necessary to establish eligibility for asylum, the BIA's interpretation of the regulations is reasonable, and we will defer.

We conclude that the statute's and regulation's reference of fear of persecution in one's "country of nationality or last habitual residence" identifies the nation as the relevant geographic unit for purposes of determining asylum.  Asylum is granted when an alien cannot return to his country because of a well-founded fear of persecution;[15] but the alien need not return to a particular part of his country of origin.  Thus, when a person can relocate within his country upon return, the extraordinary act of granting asylum is not necessary.   We are in agreement with

---

[14] *See* 8 U.S.C. § 1158 (1996) (defining general parameters for granting or denying asylum).

[15] *See* 8 U.S.C. § 1101(a)(42)(A) ("The term 'refugee' means [ ] any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.").

our sister circuits in so holding.[16]  While the language of the regulation may not require this reading, it is certainly reasonable to conclude that the regulation embodies the policy that asylum in the United States should be an option of last, rather than first, resort for persons facing localized persecution in other countries.

Therefore, we defer to the BIA's reasonable interpretation of its governing statutes and regulations, and conclude that in cases where the applicant has not shown that the government is the persecutor, an applicant for asylum bears the burden of proving that relocation within the applicant's country of origin would not be reasonable under the circumstances.[17]  When the persecutor is the national government or sponsored by the national government, however, the burden shifts to the INS to rebut the obvious presumption of the national government's willingness and ability to persecute an individual anywhere within its jurisdiction.


B

Because the BIA made no error of law, we will reverse only if no reasonable fact finder could have concluded that neither of the petitioners could have relocated within Guatemala.  We find that the BIA's determination was supported by substantial evidence.  The

---

[16] *See Mazariegos v. Office of the U.S. Attorney General*, 241 F.3d 1320, 1325-27 (11th Cir. 2001); *Singh v. Moschorak*, 53 F.3d 1031, 1034 (9th Cir. 1995).

[17] We again note that we reserve the question of the burden of proof when the applicant has shown past persecution.

threats directed towards Gomez-Paneta and Lopez-Gomez demanded that they leave Jalapa; there was no intimation that they would be unsafe elsewhere in Guatemala. Further, Lopez-Gomez testified that he lived in Guatemala City, which is about 100 kilometers by road from Jalapa, for two years without harm. We affirm the BIA's conclusion that Gomez-Paneta and Lopez-Gomez both failed to meet their burdens of showing a well-founded fear of persecution in Guatemala.

IV

For the foregoing reasons, the judgment of the BIA is AFFIRMED.

8