United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 9, 2005**

Charles R. Fulbruge III
Clerk

REVISED OCTOBER 11, 2005

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 04-60399

VILY LONG

Petitioner

v.

ALBERTO R GONZALES, U S ATTORNEY GENERAL

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before KING, Chief Judge, and DAVIS, Circuit Judge, and
ROSENTHAL,* District Judge.

PER CURIAM:

Petitioner Vily Long appeals a decision by the Board of
Immigration Appeals that his departure from the United States
while his appeal to the BIA was pending resulted in a withdrawal
of his appeal under 8 C.F.R. § 1003.4. Because we conclude that
Long departed under § 1003.4, we DENY Long's petition for review.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Vily Long, a citizen of Cambodia, entered the

---

 * District Judge of the Southern District of Texas,
sitting by designation.

-1-

United States in February 1997 as a non-immigrant visitor for pleasure. Long was authorized to remain in the United States until August 15, 1997. He, however, remained in the United States beyond the authorized period. Consequently, on September 22, 1997, the former Immigration and Naturalization Service ("INS")[1] initiated removal proceedings and issued a Notice to Appear, charging Long with remaining in the United States beyond the authorized period. Long filed applications for asylum and withholding of removal. Following a hearing, the Immigration Judge ("IJ") denied Long's applications. In March 1998, Long appealed to the Board of Immigration Appeals ("BIA").

On July 28, 2000, the INS moved the BIA to dismiss summarily Long's appeal pursuant to former 8 C.F.R. § 3.4 (redesignated as 8 C.F.R. § 1003.4, effective February 28, 2003), arguing that Long's departure from the United States to Mexico while his appeal was pending served to withdraw his appeal. Long filed a response to the INS's motion, arguing that although a "voluntary" departure during a pending appeal would serve to withdraw that appeal, an "involuntary" departure from the United States did not automatically constitute a withdrawal of a pending appeal. Consistent with his argument, Long alleged that his departure from the United States into Mexico was "involuntary."

On January 7, 2003, the BIA issued an order remanding the

---

[1]    The Homeland Security Act of 2002 transferred the functions of the INS to the Department of Homeland Security.  See 6 U.S.C. §§ 251(2), 252(a)(3), 271(b).

-2-

case to the IJ for further fact finding. The BIA noted that whether an alien's appeal is withdrawn under § 3.4 by virtue of the alien's "involuntary or unknowing departure from the United States" appeared to be a question of first impression in this circuit. The BIA specifically found that "the lone term 'departure' in 8 C.F.R. [§] 3.4 as to withdrawals of appeals is not meant to reach involuntary removals from the country." Because the BIA lacked the authority to make factual findings based on the affidavits before it, it "decide[d] only that, assuming the facts show that the respondent's departure to Mexico was not voluntary on his part, his appeal was not thereby 'withdrawn' under 8 C.F.R. [§] 3.4." Accordingly, the BIA remanded, instructing the IJ to make a factual determination as to whether Long's departure was involuntary.

On remand, following a hearing, the IJ made an express determination that Long's departure from the United States was involuntary. The IJ set forth the following facts in support of its determination: one Friday night in June 2000, Long and a Cambodian colleague went sightseeing in Brownsville, Texas and were escorted by Mario Lazcano.[2] Prior to their departure, Long made it clear to Lazcano, the driver of the vehicle, that he could not go to Mexico. Lazcano was born in Brownsville but had not been there for eighteen years. Although Lazcano did not intend to take Long into Mexico, in attempting to drive to a park

---

[2]     Lazcano is spelled "Lezcano" in the hearing transcript.

that he thought he remembered frequenting eighteen years ago, Lazcano drove onto a bridge that crossed over to Mexico. Once on the bridge, Lazcano asked someone for instructions on how to turn around, and "he was advised how to turn around and comeback, but what he wound up doing was going into Mexico and having to present documentation to get back in." In the interim, Long, Lazcano, and Long's colleague were robbed by Mexican police, who took their papers and money. Thereafter, the three men attempted to reenter the United States, but Long and his friend were declined reentry for lack of documentation. Long contacted a lawyer, and two days later he was allowed to reenter the United States. The IJ noted that Long stated he could not have known that he was leaving the United States because he could not read English and he had been reassured by Lazcano that they would not be going to Mexico. Accordingly, the IJ referred the case back to the BIA and recommended that Long be allowed to proceed with his appeal.

On April 9, 2004, the BIA found that Long's appeal was withdrawn pursuant to 8 C.F.R. § 1003.4. While the BIA noted that it had previously indicated that an involuntary departure from the United States would not result in the withdrawal of an appeal and that the IJ ruled that Long's departure was involuntary, it found that "[u]pon further review, we find that the respondent's departure from the United States has resulted in

-4-

a withdrawal of his appeal."[3]  Long filed a petition for review, arguing that the BIA erred in ruling that he had withdrawn his appeal to the BIA pursuant to 8 C.F.R. § 1003.4 because of his departure from the United States.

## II.  DISCUSSION

### A.  Standard of Review

We review the BIA's legal conclusions de novo.  Girma v. INS, 283 F.3d 664, 666 (5th Cir. 2002) (per curiam);  Lopez-Gomez v. Ashcroft, 263 F.3d 442, 444 (5th Cir. 2001) (per curiam).  We will defer to the BIA's interpretation of immigration regulations if the interpretation is reasonable.  Lopez-Gomez, 263 F.3d at 444; Mikhael v. INS, 115 F.3d 299, 302 (5th Cir. 1997).  In reviewing the BIA's factual findings, we determine whether they are supported by substantial evidence.  Girma, 283 F.3d at 666; Ozdemir v. INS, 46 F.3d 6, 7-8 (5th Cir. 1994) (per curiam); Chun v. INS, 40 F.3d 76, 78 (5th Cir. 1994) (per curiam). Accordingly, we accept the factual findings of the BIA unless the evidence is so compelling that no reasonable fact finder could

---

[3]    The BIA also decided that it lacked jurisdiction to adjudicate Long's application for adjustment of status under section 245(a) of the Immigration and Nationality Act, 8 U.S.C. § 1255(a), which was based on a pending visa petition filed by his U.S. citizen spouse on his behalf.  The BIA reasoned that, after effectuating his own removal and attempting to reenter the United States from Mexico, Long was an "arriving alien."  See 8 C.F.R. § 1245.2(a)(1) (providing that "[a]fter an alien, other than an arriving alien, is in deportation or removal proceedings, his or her application for adjustment of status under section 245 of the Act or section 1 of the Act of November 2, 1966 shall be made and considered only in those proceedings" (emphasis added)).

fail to find otherwise. Lopez-Gomez, 263 F.3d at 444; Mikhael, 115 F.3d at 302.

**B. Analysis**

Section 1003.4 of Title 8 of the Code of Federal Regulations provides:

> Withdrawal of appeal.
>
> In any case in which an appeal has been taken, the party taking the appeal may file a written withdrawal thereof with the office at which the notice of appeal was filed. If the record in the case has not been forwarded to the Board on appeal in accordance with § 1003.5, the decision made in the case shall be final to the same extent as if no appeal had been taken. If the record has been forwarded on appeal, the withdrawal of the appeal shall be forwarded to the Board and, if no decision in the case has been made on the appeal, the record shall be returned and the initial decision shall be final to the same extent as if no appeal had been taken. If a decision on the appeal has been made by the Board in the case, further action shall be taken in accordance therewith. Departure from the United States of a person who is the subject of deportation proceedings subsequent to the taking of an appeal, but prior to a decision thereon, shall constitute a withdrawal of the appeal, and the initial decision in the case shall be final to the same extent as though no appeal had been taken. <u>Departure from the United States of a person who is the subject of deportation or removal proceedings, except for arriving aliens as defined in § 1001.1(q) of this chapter, subsequent to the taking of an appeal, but prior to a decision thereon, shall constitute a withdrawal of the appeal, and the initial decision in the case shall be final to the same extent as though no appeal had been taken</u>.

(emphasis added). On its face, § 1003.4 does not distinguish between various types of departure. Long, however, citing to Aquilera-Ruiz v. Ashcroft, 348 F.3d 835 (9th Cir. 2003), Mejia-Ruiz v. INS, 51 F.3d 358 (2d Cir. 1995), and Aleman-Fiero v. INS,

-6-

481 F.2d 601 (5th Cir. 1973) (per curiam), argues that only a "voluntary departure"[4] can serve to withdraw an appeal under § 1003.4. Specifically, Long contends that because those cases emphasize the fact that the aliens left the United States "voluntarily," those cases engrafted § 1003.4 with an exception for involuntary departures. Because Long asserts that he left the United States involuntarily, he concludes that his appeal was not withdrawn under § 1003.4.

First, we do not read Aquilera-Ruiz, Mejia-Ruiz, and Aleman-Fiero so liberally as to provide an exception to § 1003.4 for "involuntary" departures. To do so would require us to read into § 1003.4 an exception that it neither expressly nor implicitly provides. Second, Long's actions were sufficient to withdraw his appeal under § 1003.4. It may be clearer to analyze Long's actions under the concept of waiver. Waiver is an intentional relinquishment or abandonment of a known right or privilege. Kontrick v. Ryan, 540 U.S. 443, 458 n.13 (2004); Johnson v. Zerbst, 304 U.S. 458, 464 (1938); United States v. Dodson, 288 F.3d 153, 160 (5th Cir. 2002).[5] Long's actions were

---

[4]     We note that, other than in addressing Long's argument, we avoid using the term "voluntary departure" because it is a term of art that is used when the Attorney General has granted an alien permission to depart the United States at the alien's own expense, in lieu of being subject to removal proceedings or prior to the completion of such proceedings. See 8 U.S.C. § 1229c(a)(1). Long was not granted such a voluntary departure.

[5]     As distinguished from waiver, forfeiture is the failure to assert a right. Kontrick, 540 U.S. at 458 n.13; Dodson, 288 F.3d at 161.

sufficient to constitute a waiver of his right to appeal under § 1003.4. By his own free will, Long put himself in a position, during the Friday night Brownsville sightseeing trip, where he departed the United States. Long's testimony, which the IJ credited, indicates that he got into the car, knew that he was going to the border, did not pay attention, and did not make sure that others were paying attention to what was happening. Thus, via his own actions, Long ended up in another country.[6] Accordingly, pursuant to the plain language of § 1003.4 and Long's actions, Long's departure was sufficient to withdraw his appeal.

### III. CONCLUSION

For the foregoing reasons, we DENY Long's petition for review.

---

[6] We save for another the day the question whether, in the absence of a waiver, an alien can be held to have withdrawn his appeal when he departs the United States (e.g., when an alien is forcibly removed from the country). That question is not before us since Long waived his appeal through his own action.