United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 4, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-60614
Summary Calendar

IRFAN MAREDIA,

Petitioner,

versus

ALBERTO R. GONZALES, U.S. ATTORNEY GENERAL,

Respondent.

Petition for Review of an Order of
the Board of Immigration Appeals
BIA No. A98 344 674

Before GARWOOD, CLEMENT and PRADO, Circuit Judges.

PER CURIAM:[*]

Petitioner Maredia, whose brief in this court states that he "is an about 28 year old Indian Citizen" who "was placed in removal proceedings as he was entering the United States illegally near Seattle, WA" and that he "entered the United States illegally from Canada border near Seattle WA without inspection", petitions for review of the Board of Immigration Appeals (BIA) June 1, 2005 per

---

[*]Pursuant to 5TH CIR. R. 47.5 the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

curiam order affirming without opinion the June 29, 2005 order of the immigration judge (IJ) ordering that he be removed. We deny the petition for review.

Petitioner's affidavit filed below states that he was arrested by the Department of Homeland Security on or about September 2, 2004 in the State of Washington and at that time was told he would be placed in removal proceedings and was given a copy of Notice to Appear (NTA) dated September 2, 2004. The NTA alleges that Maredia (1) is not a United States citizen or national, (2) is a native and citizen of India, (3) arrived in the United States on or about September 2, 2004 at or near Oroville, Washington, and (4) was not then admitted or paroled after inspection by an Immigration Officer. It charges that Maredia is removable under section 212(a)(6)(A)(i) of the Immigration and Nationality Act as "an alien present in the United States without being admitted or paroled." The NTA orders that Maredia appear before an immigration judge (to show cause why he should not be removed from the United States based on the stated charges) at a specified address in Seattle, at a date and time "to be set." The NTA purports to be issued at Oroville, Washington, by "Richard M. Graham, Jr. Patrol Agent in Charge." Maredia was held in immigration custody, and on September 13, 2004 his bond was fixed by the Tacoma, Washington immigration office at $10,000 and shortly thereafter he was released from custody, giving as his address the residence of a friend in

2

Houston, Texas. The original NTA, having apparently previously been filed in the Tacoma office, was received and filed in the Seattle immigration office on September 14, 2005, and on September 15, 2004 Ms. Buttar, a Seattle attorney who had been retained by Maredia, was notified in writing by the immigration court that the hearing on Maredia's NTA would be on December 28, 2004 at 1:30 p.m. at the Seattle address (the same as that specified in the NTA). On November 12, 2004 Buttar filed in the proceedings a motion seeking both to change venue to Houston, Texas, and to withdraw as counsel. Filed with and in support of the motion was Buttar's affidavit in which she noted that Maredia had moved to Texas and "it is my understanding that" he "will retain an attorney in Texas", that she had provided him a copy of his immigration file, and that he could not afford to travel to Seattle. The affidavit also states that Maredia "will be applying for Asylum," that he "admits allegations one (1) through (4) in the Notice to Appear" and "concedes removability," "but declines to designate a country to which he may be removed, should removal become necessary." A copy of the motion and affidavit was served by mail on Maredia at his designated Houston address. On November 17, 2004, the Seattle IJ issued an order that Buttar's motion to withdraw "be conditionally granted" and that "until new counsel enters an appearance, present counsel is responsible for acceptance of service documents." On November 18, 2004, the Seattle IJ granted the motion to change venue and

3

transferred the proceedings to Houston, a copy of the order being served on Maredia.

On November 30, 2004, the case was set for hearing before the Houston IJ on February 15, 2005. On the latter date Maredia and his attorney, Mr. Kaufman of the San Antonio firm of Azar-Farr, appeared, as did government counsel. Kaufman advised that Maredia would be filing for asylum, that he lived in Austin, not Houston, and requested a change of venue to San Antonio. The IJ then inquired of Kaufman whether he was "ready to enter pleadings today." Kaufman stated he believed "that issue is address" in the affidavit filed with the change of venue motion; the IJ then reviewed that affidavit and observed "he admits allegations one through four and concedes removability," and then stated "The court will designate India. The charge is sustained." The IJ then granted the motion to transfer venue to San Antonio.

On February 17, 2005, notice was given that the case would be heard in San Antonio on April 13, 2005. At that time Maredia and his attorney Mr. Azar-Farr appeared. The IJ asked if Azar-Farr objected to the Buttar affidavit in support of the motion to transfer from Seattle to Texas being "admitted into the record." Azar-Farr indicated he had a copy of the affidavit and stated "I don't know if I would have any objections to it" and then "you can submit it into the record, and, but I do like to reserve any objections I may have to it perhaps later on if the court would

4

entertain it at all." The IJ "entered" the affidavit "as Exhibit Number 2." The IJ then concluded the hearing by resetting the case for June 15, 2005, to allow counsel "some more time to talk to your client about possible relief and prepare an application" (presumably for asylum).

On June 15, 2005, Maredia and his attorney Azar-Farr appeared. The IJ noted that inadmissibility had been established and asked if Azar-Farr was seeking any form of relief. Azar-Farr said he was seeking termination without prejudice, and alternatively, voluntary departure. He tendered an affidavit, dated June 13, 2005, of Mr. Maredia, and the NTA copy, and the October 6, 1994 sheet listing sources of free legal services in the Seattle area, which Maredia was furnished September 2, 2004. The affidavit also states that when he was given the NTA he was not told when the hearing would be, and was never told he "had the right to contact any consular official," and that he "asked his former lawyer, Ms. Taran Buttar, to attempt to transfer my case to the San Antonio area" but "never authorized Ms. Buttar to concede in court any factual allegations legal charges against me." Azar-Farr said he was moving to terminate on three grounds (though "realizing that the factual allegations were conceded in Seattle apparently"), namely: (1) the NTA did not state the date and time of the hearing, contrary to 8 U.S.C. § 1229(a)(1)(G)(i), (2) that when served with the NTA Maredia was not furnished a quarterly updated list of sources for

5

free legal services as required by 8 U.S.C. §§ 1229 (a)(1)(E)(ii) and 1229(b)(2), and (3) "he was not advised of his right to contact any consul or officials contrary to the Geneva Convention." Azar-Farr asserted that "prejudice need not be shown" to get relief on any of these grounds; and he did not assert any facts suggestive of or claimed to reflect prejudice. The government objected on the ground that Maredia had been represented by counsel throughout and, in essence, that no prejudice was shown. The IJ inquired of Azar-Farr whether he intended to file any motion based on ineffectiveness or improper assistance of counsel on the part of Buttar, and Azar-Farr responded "a decision, I think up to now has been made not to file the *Matter of Lozado* motion against former counsel." No such motion has ever been filed (nor has any application for asylum ever been filed). The IJ continued the matter until June 29, with written arguments to be received by June 24 and then stated that "If the Government wants to submit written argument, it's also due on that same day June 24th."

On Jun 21 Azar-Farr filed a motion (and supporting brief) for termination without prejudice (or, alternatively for a hearing "to determine scope of constitutional and regulatory violations"). The motion alleges only the same three "violations" as urged orally at the June 15, 2005 hearing. No facts are alleged which are claimed to constitute or reflect prejudice, but the motion, though asserting no prejudice, argues that "Having raised his objections,

6

respondent is at least entitled to develop the record to demonstrate the nature and the extent of the prejudice suffered by him." The Government did not file any written argument.

The hearing recommenced June 29, 2005, with Maredia and attorney Azar-Farr and government counsel present. Azar-Farr said the government's failure to file a written response "should be deemed as lack of opposition to the Motion to Terminate." The IJ questioned Azar-Farr at length as to what prejudice he was alleging, or would attempt to show, from the claimed violations alleged. Azar-Farr responded that prejudice did not have to be shown. When pressed by the IJ as to what he would show *if* prejudice had to be shown, Azar-Farr ultimately stated that "the prejudice we would be able to show would be the violation of the statute." The IJ then denied the motion for further hearing as to prejudice "because the respondent has not alleged any prejudice," and denied the Motion to Terminate. He inquired of Mr. Azar-Farr if he requested any other relief. He mentioned only voluntary departure. The IJ noted that if he reserved his right to appeal, voluntary departure would only be available under section 1229c(b)(1) and that because Maredia had been in the United States less than a year when the NTA was issued he would be ineligible under section 1229c(b)(1)(A). Azar-Farr then argued that this showed prejudice, but the IJ pointed out that if the proceedings were then terminated a new NTA could easily be filed before a year

7

from Maredia's September 2, 2004 entry into the United States, a matter which Azar-Farr did not dispute. Maredia reserved his right to appeal. The IJ then issued his June 29, 2005 order that Maredia be removed and denying voluntary departure, together with his oral decision finding that Maredia had failed to demonstrate or even allege any prejudice whatever from the allged violations of which he complained.

We note that in this court Maredia principally asserts the claims he raised before the IJ.[**] We also observe that nothing in the record suggests that there is even any potential factual issue as to Maredia being removable as charged.

On a petition for review of a BIA decision, we review factual findings for substantial evidence and questions of law de novo. *Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 444 (5th Cir. 2001). We accord "deference to the BIA's interpretation of immigration

_____

[**]He also now complains that the copy of the NTA served on him was not signed. However, the original NTA in the record is signed and Maredia has never asserted that it was not in fact issued and signed by Patrol Agent in Charge Graham, over whose typed name and title an illegible signature appears. No contention in this respect was made before the IJ. We also note that a patrol Agent in Charge is authorized to issue a NTA. *See* 8 C.F.R. § 239.1(6) ("Patrol agents in charge") (2005) (68 FR 35275, June 15, 2003). This contention is wholly without merit. *See Ali v. Gonzales*, 435 F.3d 344 (5th Cir. 2006). The contention that the government consented or agreed to the motion to terminate because it did not file a written argument is also wholly without merit. The government opposed the motion on June 21 and the IJ in essence merely stated that if the government wished to *also* respond *in writing* it had to do so by June 24.

Maredia does not challenge the denial of voluntary departure, which is clearly mandated by § 1229c(b)(1)(A).

statutes unless the record reveals compelling evidence that the BIA's interpretation is incorrect." *Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997). While we normally review only the decision of the BIA, when, as in this case, the BIA adopts the IJ's decision without opinion, we review the IJ's decision. *Tamara-Gomez v. Gonzales*, 447 F.3d 343, 347 (5th Cir. 2006).

The BIA has consistently held that "so long as the enforcement officials of the Service choose to initiate proceedings against an alien and to prosecute those proceedings to a conclusion, the immigration judge and the Board must order deportation if the evidence supports a finding of deportability on the ground charged." *In re Yazdani*, 17 I. & N. Dec. 626, 630 (BIA 1981); *see In re Singh*, 21 I. & N. Dec. 427, 435 (BIA 1996); *In re Wong*, 13 I. & N. Dec. 701, 703 (BIA 1971). Maredia's argument to the contrary is without merit. As the IJ did not have discretionary authority to terminate the removal proceedings against Maredia, the denial of Maredia's motion to terminate the removal proceedings was not error. *See Lopez-Telles v. INS*, 564 F.2d 1302, 1304 (9th Cir. 1977); *Panova-Bohannan v. Ashcroft*, 74 Fed. App'x 424, 425-26 (5th Cir. 2003).

Maredia's due process challenge regarding the technical procedural defects attendant to his immigration proceedings fails because he has not made an initial showing of substantial prejudice. *See Anwar v. INS*, 116 F.3d 140, 144 (5th Cir. 1997).

9

Finally, Maredia is bound by counsel's concession of removability, which was made while Maredia was still represented by that counsel and which new counsel accepted and did not challenge. *Matter of Velasquez*, 19 I. & N. Dec. 377, 382 (BIA 1986).

PETITION FOR REVIEW DENIED.