IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 7, 2007

Charles R. Fulbruge III
Clerk

No. 06-60054

SALMANALI SADRUDDIN SAJAN

Petitioner

v.

MICHAEL B MUKASEY, US ATTORNEY GENERAL

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before KING, GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Salmanali Sadruddin Sajan petitions this court for review of the Board of Immigrations Appeals' December 27, 2005, final removal order affirming the Immigration Judge's denial of Sajan's request for administrative closure or indefinite continuance of his removal proceedings.  We have jurisdiction to review the petition pursuant to 8 U.S.C. § 1252(a), and for the reasons set forth below, grant the petition.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Salmanali Sadruddin Sajan is a twenty-nine-year-old citizen and native of Pakistan. Sajan testified in Immigration Court on September 29, 2003, before an Immigration Judge ("IJ") that he arrived in the United States with his family in 1981, when he was just three years old. Sajan presented affidavits supporting his testimony, as well as school and immunization records dating back to 1983. Since then, Sajan has twice traveled to Pakistan with his family to visit relatives, once from May 1984 to June 1984 and again from June 1989 to August 1989. On or about August 29, 1989, Sajan reentered the United States with his family on a nonimmigrant tourist visa.

On March 20, 2003, Immigration and Customs Enforcement ("ICE") issued a Notice to Appear, initiating removal proceedings against Sajan on the grounds that he had overstayed his visa pursuant to § 237(a)(1)(B) of the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1227(a)(1)(B). In a June 30, 2003, hearing before the IJ, Sajan admitted the charges and conceded removability. Based on these admissions, the IJ determined that Sajan was subject to removal. However, during the June 30 hearing, Sajan requested a continuance on account of his pending legalization application under the Legal Immigration Family Equity Act ("LIFE Act"), § 245A of the INA, 8 U.S.C. § 1255a. The continuance was granted, and a hearing was scheduled for September 29, 2003.

At the September 29, 2003, hearing, Sajan argued that his proceedings should be terminated or administratively closed because he was prima facie eligible for legalization pursuant to an imminent class action settlement in Newman v. Bureau of Citizenship and Immigration Services, No. 87-4757 (C.D. Cal. Feb. 17, 2004) (the "Newman Settlement"). In the alternative, Sajan requested either a continuance until the district court approved the Newman Settlement, or voluntary departure. Without the IJ making a determination of Sajan's prima facie eligibility, the Department of Homeland Security ("DHS")

opposed termination on the grounds that he previously had admitted the charges and conceded removability. The IJ denied all of Sajan's requests and ordered him removed to Pakistan.

Sajan appealed the decision of the IJ to the Board of Immigration Appeals (the "BIA"). On December 20, 2004, the BIA issued a per curiam order, unopposed by DHS, remanding the proceedings to the IJ for Sajan to apply for adjustment of status pursuant to the LIFE Act and the Newman Settlement. In a February 7, 2005, hearing, the IJ asked Sajan for statutory or regulatory authority under which the Immigration Court had jurisdiction to make a determination of eligibility for legalization. Finding no authority, the IJ insisted that the Immigration Court lacked jurisdiction to determine Sajan's ultimate eligibility under the Newman Settlement, but granted a continuance for him to pursue his application with DHS.

On March 28, 2005, the IJ granted a second continuance for the processing of Sajan's Newman Settlement application but made no determination of his eligibility for adjustment of status. The IJ refused to terminate the proceedings, denied an indefinite continuance, and set a third hearing for June 27, 2005. On June 27, the IJ denied Sajan's motions for a third continuance or termination of the proceedings and certified the case back to the BIA.

On December 27, 2005, the BIA issued a final removal order affirming the IJ's decision. The BIA cited to the regulations that implement the LIFE Act—suggesting that the IJ has jurisdiction to grant administrative closure to legalization applicants—noting that they "provide . . . that removal proceedings against legalization applicants may be administratively closed or continued indefinitely until the DHS adjudicates the alien's application, with the concurrence of DHS." However, the BIA found that the "respondent did not request administrative closure in proceedings before the Immigration Judge."

On January 25, 2006, Sajan filed a motion to reopen seeking only voluntary departure, which was granted on April 12, 2006. Also on January 25, 2006, Sajan filed a timely petition for review of the BIA's final removal order with this court. On April 24, 2006, Sajan filed a motion for a stay of removal and of the voluntary departure period, which DHS did not oppose. This court issued the stays on June 19, 2006.

## II. STANDARD OF REVIEW

On a petition for review of a BIA decision, we review the BIA's decision and the IJ's decision to the extent that it influenced the BIA. Mikael v. INS, 115 F.3d 299, 302 (5th Cir. 1997). Questions of law are reviewed de novo. Lopez-Gomez v. Ashcroft, 263 F.3d 442, 444 (5th Cir. 2001). We afford considerable "deference to the BIA's interpretation of immigration statutes unless the record reveals compelling evidence that the BIA's interpretation is incorrect." Mikhael, 115 F.3d at 302. We will not substitute the interpretation of this court for that of the BIA if it is reasonable, but we are compelled to reject any construction by the BIA that is arbitrary, capricious, or manifestly contrary to the to the statute. Chevron, U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837, 844 (1984). Factual findings are reviewed for substantial evidence, Mikhael, 115 F.3d at 302, which "requires only that the BIA's decision be supported by record evidence and be substantially reasonable," Omagah v. Ashcroft, 288 F.3d 254, 258 (5th Cir. 2002).

## III. DISCUSSION

In its December 27, 2005, order, the BIA acknowledged that the regulations implementing the LIFE Act provide the IJ or the BIA the jurisdictional authority by which "removal proceedings against legalization applicants may be administratively closed or continued indefinitely until the DHS adjudicates the alien's application." The relevant regulation states:

> An alien who is prima facie eligible for adjustment of status under LIFE Legalization who is in exclusion,

> deportation, or removal proceedings before the Immigration Court or the Board of Immigration Appeals (Board), or who is awaiting adjudication of a motion to reopen or motion to reconsider filed with the Immigration Court of the Board, may request that the proceedings be administratively closed or that the motion filed be indefinitely continued, in order to allow the alien to pursue a LIFE Legalization application. In the request to administratively close the matter or indefinitely continue the motion, the alien must include documents demonstrating prima facie eligibility for the relief, and proof that the application for relief had been properly filed with the Service as prescribed in this section. With the concurrence of Service counsel, if the alien appears eligible to file for relief under LIFE Legalization, the Immigration Court or the Board, whichever has jurisdiction, shall administratively close the proceeding or continue the motion indefinitely.

8 C.F.R. § 245a.12(b)(1). In other words, upon request of the petitioner, the IJ or the BIA, whichever has jurisdiction, must consider the petitioner's prima facie eligibility for legalization. If the IJ or the BIA determines that the petitioner is prima facie eligible for relief and DHS concurs, the removal proceeding must be administratively closed or indefinitely continued while DHS considers the petitioner's application for legalization.

In its December 27, 2005, order, the BIA found that Sajan "did not request administrative closure in proceedings before the Immigration Judge." This factual finding is not supported by substantial evidence. To the contrary, during the September 29, 2003, hearing, Sajan expressly requested administrative closure on the grounds that he was prima facie eligible for membership in the impending Newman class. Further, the IJ's September 29, 2003, oral decision referenced Sajan's request for administrative closure, stating that the Immigration Court could not administratively close proceedings based on the then-anticipated Newman Settlement absent agreement from DHS, which DHS

5

withheld, arguing that Sajan's admissions put his removal properly before the IJ.

Since Sajan did request administrative closure in proceedings before the IJ, the BIA's December 27, 2005, order was incomplete because it failed to consider whether the IJ correctly denied Sajan's request for administrative closure without determining his prima facie eligibility for LIFE Act relief under the Newman Settlement as authorized by 8 C.F.R. § 245a.12(b)(1). Because the BIA did not review the IJ's failure to consider Sajan's prima facie eligibility for the Newman class, we do not reach the issue of Sajan's eligibility, if any, for relief under the Newman Settlement and the LIFE Act. Similarly, as the BIA did not review the grounds provided by DHS for opposing administrative closure—that Sajan's admission to overstaying his 1989 nonimmigrant visa established that he did not meet the continuous presence requirement under the LIFE Act and Newman Settlement—we do not decide whether DHS's refusal to consent was reasonable, or if it need be reasonable, in this case.

## IV.  CONCLUSION

For the foregoing reasons, we GRANT the petition for review and remand the case to the BIA for reconsideration consistent with this opinion.