# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-60510

United States Court of Appeals
Fifth Circuit

**FILED**
July 9, 2019

Lyle W. Cayce
Clerk

JOSE NELSON CRUZ; NELSON STEVEN CRUZ-VILLEGA,

      Petitioners,

v.

WILLIAM P. BARR, U. S. ATTORNEY GENERAL,

      Respondent.

Petitions for Review of an Order
of the Board of Immigration Appeals

Before KING, SMITH, and WILLETT, Circuit Judges.

DON R. WILLETT, Circuit Judge:

Jose Cruz, a former Salvadoran police officer, fled his home country and illegally entered the United States with his son after receiving threats from the Revolutionaries—a faction of the Barrio 18 gang. Conceding his removability, Cruz requested asylum, withholding of deportation, and protection under the United Nations Convention Against Torture.

The Immigration Judge denied all relief, as did the Board of Immigration Appeals, which accepted the Immigration Judge's key findings that (1) Cruz did not suffer past persecution in El Salvador, (2) Cruz failed to satisfy his burden of establishing a well-founded fear of future persecution, and (3) because Cruz failed to make a prima facie showing on his asylum claim, he necessarily failed to make the more stringent showing for withholding of

No. 17-60510

removal. The Board denied relief across the board, and Cruz brought this petition for review.

Under the highly deferential standards of review that guide our analysis, we conclude that the Board committed no reversible error. We DENY Cruz's petition for review.

I

In El Salvador, Cruz patrolled his hometown of Zacatecoluca. The Revolutionaries didn't like that and threatened Cruz. The first threat came when Cruz was sitting in a car with his son. Gang members approached Cruz and told him "they knew him, knew where he lived, and wanted him out of the territory." One member raised his shirt to show his gang tattoos and a gun in his waistband. They told Cruz that they weren't going to kill him then and there because his son was with him, and there were too many witnesses. Cruz reported the incident to police officials the next day and then asked for (and received) a three-year leave of absence.

The next threat, not long after, was a threatening note left on Cruz's door: "We don't want to see you in our neighborhood again, or you are going to regret it." Later that day, the gang's leader called Cruz and told him that he'd been given the green light to murder Cruz and his son unless Cruz left town. So Cruz fled the country with his son later that month. His mother continues to live in their Salvadoran home, though, and has not received any additional threats or harassment.

Cruz entered the United States illegally and was apprehended. Admitting he was removable, Cruz applied for asylum, withholding of removal, and protection under the Convention Against Torture.

The Immigration Judge denied all relief. Although the IJ sympathized with Cruz and his family, he nonetheless held that Cruz "failed to meet his burden of proof to establish he was persecuted, or suffered past persecution, or

has a well-founded fear of future persecution on account of a protected ground if he is returned to El Salvador." As the IJ saw it, the threats Cruz received "did not arise to the level that . . . would constitute persecution."[1] Finally, the IJ denied Cruz's Convention petition because Cruz "provided insufficient evidence" of torture, past or future, at the hands of Salvadoran officials acting in their official capacity.

Cruz appealed the IJ's decision to the Board, which found no error: "The record [did] not demonstrate that [Cruz was] subjected to extreme conduct constituting past persecution." Nor did the Board buy Cruz's well-founded-fear-of-future-persecution claim. The Board believed he could've reasonably avoided persecution by relocating to another part of El Salvador[2]—something Cruz admitted that he never attempted to do. And the Board emphasized that the gang had never threatened any of Cruz's family members in El Salvador. Since Cruz failed to make a prima facie asylum showing, he necessarily failed to make the more rigorous showing necessary to justify withholding of removal.[3]

Concerning Cruz's petition for protection under the Convention, the Board found that Cruz did not show that it is more likely than not that a "person acting in a public capacity" would "inflict," "acquiesce," or "give consent to . . . torture."[4] As there was no state action, the Board concluded that the IJ properly denied Cruz's request for Convention protection.

---

[1] "To the extent that [Cruz] fears gang activity," the IJ remarked, "that is merely a fear that [he] may be the victim of crime, not persecuted on account of a protected ground."

[2] *See Eduard v. Ashcroft*, 379 F.3d 182, 194 (5th Cir. 2004) ("An applicant does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality." (quoting 8 C.F.R. § 208.13(b)(2)(ii))).

[3] *See Adebisi v. INS*, 952 F.2d 910, 914 (5th Cir. 1992).

[4] *See Tamara-Gomez*, 447 F.3d at 351 ("The Convention Against Torture requires a 'public official' or 'person acting in a public capacity' to 'inflict,' 'acquiesce,' or 'give consent' to the torture.").

No. 17-60510

Cruz filed a timely motion seeking to reopen proceedings and to reconsider the Board's decision. The Board denied the motion. Cruz then appealed both the Board's decision affirming the IJ and the denial of his motions to reconsider and to reopen proceedings. We consolidated the appeals. Cruz does not appeal the Board's denial of relief under the Convention Against Torture, so those arguments are waived.[5]

II

Our review is limited and deferential. Motions to reopen removal proceedings are disfavored,[6] and we review denials of such motions "under a highly deferential abuse-of-discretion standard."[7] We review the Board's factual findings under the substantial-evidence test, reversing only when the record is "so compelling that no reasonable fact finder could fail to find the petitioner statutorily eligible for relief."[8]

On appeal, Cruz asserts that he suffered past persecution and has a well-founded fear of future persecution. He also argues that the Board abused its discretion in denying his motion to reconsider. Under the governing standards of review, we cannot say the Board committed reversible error.

A

Let's begin with the motion to reconsider. It is Cruz's burden to identify an error of law or an argument that slipped through the cracks. Cruz contends that the Board applied the wrong standard of review to the IJ's finding (that Cruz did not suffer past persecution), a legal error if he can prove it.

---

[5] "It is a well worn principle that the failure to raise an issue on appeal constitutes waiver of that argument." *United States v. Griffith*, 522 F.3d 607, 610 (5th Cir. 2008) (citing *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000)).

[6] *Altamirano-Lopez v. Gonzales*, 435 F.3d 547, 549 (5th 2006).

[7] *Gomez-Palacios v. Holder*, 560 F.3d 354, 358 (5th 2009); *see* 8 C.F.R. § 1003.2(a) ("The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board subject to the restrictions of this section.").

[8] *Roy v. Ashcroft*, 389 F.3d 132, 138 (5th Cir. 2004) (per curiam).

No. 17-60510

Unfortunately, he fails to cite pertinent authority to support this proposition. As explained below, the Board did not misstep.

Under 8 U.S.C. § 1229a(c)(6)(C), a motion to reconsider must "specify the errors of law or fact in the previous order and shall be supported by pertinent authority."[9] And federal law provides just one shot: "A party may only file one motion to reconsider any given decision and may not seek reconsideration of a decision denying a previous motion to reconsider."[10] Finally, the Board possesses broad leeway: "The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board . . . ."[11] This wide discretion persists "even if the party moving has made out a *prima facie* case for relief."[12]

Congress has granted the Board abundant leeway, and we review the Board's denial of a motion to reopen "under a highly deferential abuse of discretion standard."[13] As noted above, we must affirm the Board's refusal to reopen, even if we believe the refusal was error, "so long as it is not capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach."[14] As for the Board's legal conclusions, we review those de novo.[15]

Cruz asserts that the Board applied the wrong standard of review to the IJ's lack-of-past-persecution finding—reviewing the decision for clear error, rather than de novo. Cruz says that the Board compounded this error when it denied his motion to reconsider. He maintains that "[w]hile an IJ's *factual*

---

[9] It must also "state the reasons for the motion by specifying the errors of fact or law in the prior Board decision and shall be supported by pertinent authority." 8 C.F.R. § 1003.2(b)(1).

[10] 8 C.F.R. § 1003.2(b)(2).

[11] *Id.* § 1003.2(a).

[12] *Id.*

[13] *Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005); *see, e.g., Lowe v. Sessions*, 872 F.3d 713, 715 & n.1 (5th Cir. 2017) (collecting cases).

[14] *Singh v. Gonzales*, 436 F.3d 484, 487 (5th Cir. 2006) (quoting *Zhao*, 404 F.3d at 304).

[15] *Id.*

No. 17-60510

*determinations* can be reviewed only for clear error, an IJ's *decisions based upon law or judgment* may be reviewed de novo."[16] He frames the persecution issue as a legal (not factual) issue that deserves fresh-eyed de novo review.

The government replies that Cruz can't cite any legal authority for this proposition. And since he provided the Board with no legal basis to grant his motion to reconsider, the Board didn't abuse its discretion when it denied the motion.

We agree with the Government on this point. The Board did not abuse its discretion in denying Cruz's motion to reconsider because supporting authority was wholly absent from Cruz's motion[17]—other than the regulatory standard of review for questions of law.[18]

B

The Board held that the IJ could reasonably have found that Cruz didn't suffer past persecution and didn't have a well-founded fear of future persecution. Even though Cruz presented plenty of evidence to demonstrate past and future persecution, we can't say that the evidence *compels* a finding of persecution; accordingly, the Board did not abuse its discretion.[19]

The Attorney General has discretion to grant asylum to "refugees"[20]—that is, aliens who are "unable or unwilling to return to their home country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political

---

[16] *See* 8 C.F.R. § 1003.1(d)(3)(i)–(ii).

[17] "The motion does not identify any error of law . . . or identify any argument advanced that was overlooked by the Board."

[18] 8 C.F.R. § 1003.1(d)(3)(ii).

[19] *Long v. Gonzales*, 420 F.3d 516, 519 (5th Cir. 2005).

[20] 8 U.S.C. § 1158(a); *see also INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992).

No. 17-60510

opinion."[21] The burden of proof is on the asylum seeker to demonstrate that he meets the statutory "refugee" definition.[22] Cruz must thus demonstrate three things: (1) He was or likely will be persecuted in El Salvador (2) "on account of" (3) his "race, religion, nationality, membership in a particular social group, or political opinion."[23]

Although Cruz submitted evidence about the threats he received, why he believed these threats were credible, and how prevalent gang activity is in El Salvador, our review is limited, focusing only on whether there is substantial evidence to support the Board's finding.[24] In other words, we aren't weighing and evaluating record evidence, deciding which pieces persuade us and which don't; we are only asking whether the Board could look at the evidence and plausibly reach the finding it made.

We think substantial evidence supports the Board's no-past-persecution finding. Although Cruz testified that the gang's threats were against his entire family, he admitted that his family members who still live in El Salvador have experienced no problems with the Revolutionaries. His mother still lives in the home where the threatening note was posted, and she has encountered no difficulties with the gang.

For the same reasons, we cannot say the Board abused its discretion in finding a lack of well-founded fear of future persecution—the rest of the Cruz family has been safe. But there's a small, additional step to our future-persecution inquiry. When the applicant has *not* demonstrated past persecution, he has the burden to demonstrate that relocating within his home

---

[21] 8 U.S.C. § 1101(a)(42); *see also Dayo v. Holder*, 687 F.3d 653, 657 (5th Cir. 2012) ("To qualify for asylum, an applicant must show he is a refugee by proving he suffered past persecution or has a well-founded fear of future persecution.").

[22] 8 U.S.C. § 1158(b)(1)(B)(i); 8 C.F.R. § 1208.13(a).

[23] 8 U.S.C. § 1101(a)(42).

[24] *See Long*, 420 F.3d at 519.

country would be unreasonable.[25] Cruz admitted that he never attempted to relocate. Combined with his mother's continued safety, this constitutes substantial evidence to back-up the Board's finding that there is no well-founded fear of future persecution.

In sum, we cannot say that the Board went so far afield "that no reasonable factfinder could reach a contrary conclusion."[26] So, because the Board did not abuse its discretion in finding no persecution, Cruz's asylum claim fails.[27]

\* \* \*

For these reasons, we DENY Cruz's petition for review.

---

[25] 8 CFR 1208.13(b)(3)(i); *Eduard*, 379 F.3d at 194 ("Because there was no showing of past persecution, Petitioners had the burden to establish that their relocation was unreasonable.").

[26] *Zhao*, 404 F.3d at 306 (citing *Elias-Zacarias*, 502 U.S. at 481 n.1).

[27] While we conclude that substantial evidence supports the BIA's no-persecution determination, we also note, but need not resolve, another issue: whether Cruz's status as a former police officer falls within "particular social group." 8 U.S.C. § 1101(a)(42). The Board, in its *Matter of Fuentes* decision, distinguished between current and former police officers, recognizing that "status as a *former* member of the national police . . . is in fact an immutable characteristic" that could count as a particular social group under the statute. 19 I. & N. 658, 661–62 (1988) (emphasis added). It also explained that *current* police officers could count too, if the persecution they face doesn't fall within the type and degree of harm police officers typically expect to encounter as part of the job. Our circuit has not squarely addressed this current-versus-former-officer distinction. *See Tamara-Gomez*, 447 F.3d at 349 (failing to address the distinction); *see also Gharti-Magar v. Holder*, 551 F. App'x 197, 198–99 (5th Cir. 2014) (per curiam) (denying asylum to a Nepalese police officer and not discussing the distinction between current and former officers). The parties in today's case did not provide detailed briefing on this issue, nor was it discussed by the BIA. As our decision pivots on "substantial evidence," we need not reach the current-versus-former-officer issue.