**REVISED FEBRUARY 25, 2002**
**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 00-60295
_____


SOSSINA GIRMA,

Petitioner,


VERSUS


IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.


_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____
February 20, 2002


Before JONES, WIENER, and PARKER, Circuit Judges.

PER CURIAM:

Sossina Girma, appeals a decision by the Board of Immigration Appeals (hereinafter "BIA") denying her application for asylum and withholding of deportation.[1]  Finding a proper application of the

_____

[1]Although this opinion refers only to Sossina Girma, the case involves a joint deportation proceeding where Sossina Girma's request for asylum and withholding of deportation was joined with that of her minor daughter, Elshaday Abdo, who is seeking derivative asylum on the basis of Girma's application pursuant to

1

mixed motive standard and substantial evidence to support the BIA's factual conclusions, we affirm.

**BACKGROUND**

Girma, a native Ethiopian citizen of Amharic ethnicity, entered the United States as a non-immigrant visitor in November 1991, with authorization to remain in the United States until November 11, 1992. After failing to depart as required, Girma filed an application for asylum and withholding of deportation in the fall of 1995. In December 1995, the INS issued an Order to Show Cause.

At her evidentiary hearing in the spring of 1996, Girma testified to the following: On June 30, 1991, Girma was abducted from her home/restaurant in Ethiopia by five masked men wearing army fatigue type clothing. Girma was then blindfolded, placed in a vehicle and driven to a warehouse full of wooden furniture where she was held for two hours and then questioned concerning her involvement with the All Amhara People's Organization (hereinafter "AAPO"). After she admitted her affiliation with the AAPO, the abductors demanded that Girma pay a ransom for her release. Insisting that she had no money, Girma refused to pay the ransom. Angered by Girma's refusal, the abductors assaulted and raped her. The abductors then drove Girma approximately 30 miles from the warehouse and set her free. Girma informed the local police of the incident; however, they did not believe her story and informed her that she would be "persecuted" if she continued "telling lies." Girma was then admitted to a hospital where she remained for approximately one month. Between the time of her release from the hospital in late July and her departure to the United States in

---

8 U.S.C. § 1158(b)(3).

November 1991, Girma suffered no further encounters with her abductors.

In support of her testimony and application for asylum, Girma submitted a letter on AAPO letterhead dated July 17, 1991, identifying her as an AAPO member. Although Girma was in Ethiopia on July 17, 1991, the letter strongly advised Girma not to return to Ethiopia and failed to mention that Girma had been raped or beaten on June 30, 1991. Girma also submitted various articles discussing the political conditions in Ethiopia, including an Amnesty International study from 1995 indicating that the AAPO was not formed until 1992.

Based upon the evidence presented, the Immigration Judge (hereinafter "IJ") denied Girma's application. In March 2000, the BIA conducted a complete review of the record under a mixed motive analysis and affirmed the IJ's ruling upon a finding that Girma did not present adequate evidence from which one would reasonably conclude that the harm she suffered was motivated, at least in part, on account of her membership in a particular social group, her actual or imputed political opinions, or any other protected ground. In reaching its decision, the BIA found that Girma failed to adequately establish who attacked her and that they were motivated on account of a protected ground rather than an unprotected one. Girma now challenges the BIA's decision.

## STANDARD OF REVIEW

"We have authority to review only an order of the BIA, not the IJ, unless the IJ's decision has some impact on the BIA's decision." *Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997) (citing *Chun v. INS,* 40 F.3d 76, 78 (5th Cir. 1994)). Here, the BIA did not adopt the decision of the IJ, but conducted a complete

3

review of the record. Thus, our review is limited to the BIA's decision. The BIA's legal conclusions are reviewed *de novo*, while factual conclusions are reviewed for substantial evidence. *See Carbajal-Gonzalez v. INS,* 78 F.3d 194, 197 (5th Cir. 1996) (citations omitted). "Under the substantial evidence standard applicable to review of denials of asylum, we must defer to the BIA's factual findings unless the evidence is so compelling that no reasonable fact finder could fail to find otherwise." *Mikhael*, 115 F.3d at 304. "The BIA's determination that [Girma] was not eligible for asylum must be upheld if supported by reasonable, substantial and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias,* 502 U.S. 478, 481, 112 S. Ct. 812, 815, 117 L. Ed. 2d 38 (1992) (internal quotations and citation omitted).

## DISCUSSION

On appeal, Girma argues that the BIA erred in denying her asylum application and that she is entitled to relief because of her past persecution and well-founded fear of future persecution on account of her political opinion and association with the AAPO. Specifically, Girma contends that the BIA incorrectly required her to prove that her persecutors were motivated by a protected ground to the exclusion of other motivations, and therefore, failed to properly apply the mixed motive standard. Furthermore, Girma maintains that she satisfied the evidentiary burden set forth in *Elias-Zacarias*, by providing *some* evidence that the persecution she suffered was motivated, at least in part, by a protected ground.

The Attorney General may grant asylum to an alien who is a refugee. 8 U.S.C.A. § 1158(b)(1) (West 1999). The term alien is defined as "any person not a citizen or national of the United

4

States."  8 U.S.C.A. § 1101(a)(3) (West 1999).  An alien is a refugee when he or she "is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C.A. § 1101(b)(42) (West 1999).

"The level of proof required to satisfy the requirements for withholding of deportation is more stringent than for asylum purposes."  *Mikhael,* 115 F.3d at 306 (citations omitted).  To avoid deportation, "an alien must establish a clear probability of persecution."  *INS v. Stevic*, 467 U.S. 407, 413, 104 S. Ct. 2489, 2492, 81 L. Ed. 2d 321 (1984).  Thus, where an alien fails to satisfy the requirements for asylum, he or she will also have failed to satisfy the requirements for withholding of deportation.

### A. Mixed Motive Analysis

Oftentimes, persecutors will convey to their victims the motivation behind the persecution.  Other times they may not.  Persecution may also result from a mixture of motivations.  Although our research reveals no Fifth Circuit case, and neither Girma nor the government have brought one to our attention, which involves a mixed motive analysis in the context of asylum law,[2] the BIA and at least two other circuit courts have applied a mixed motive analysis.  *In re S-P-,* 21 I. & N. Dec. 486 (BIA 1996); *Borja*

---

[2]Girma suggests that our decision in *Rivas-Martinez v. INS,* 997 F.2d 1143 (5th Cir. 1993), involved a mixed motive case.  However, that case recognized that when an asylum applicant has voiced a non-political excuse to avoid conscription, he is not thereafter precluded from demonstrating that the conscriptors either knew or would learn of the applicant's political opposition by extraneous evidence.  *Rivas-Martinez,* 997 F.2d at 1148.

*v. INS,* 175 F.3d 732 (9th Cir. 1999)(en banc); *Osorio v. INS,* 18 F.3d 1017 (2nd Cir. 1994).

Under a mixed motive analysis, an applicant need not show past persecution or fear of future persecution "solely on account of" a protected ground. *Borja,* 175 F.3d at 735 (quoting *Osorio,* 18 F.3d at 1028. Stated another way, "the presence of possible mixed motives need not [necessarily] defeat an asylum claim." *Kozulin v. INS,* 218 F.3d 1112, 1117 (9th Cir. 2000) (internal quotations and citations omitted) (discussing the holding in *Borja,* 175 F.3d 732). An applicant must only show that one of the persecutor's motives falls within a statutorily protected ground. *Singh v. Ilchert,* 63 F.3d 1501, 1509 (9th Cir. 1995). Furthermore, an applicant is not required to provide direct proof of her persecutor's motives but rather *some* evidence of it, direct or circumstantial. *Elias-Zacarias,* 502 U.S. at 483, 112 S. Ct. at 816-17. The evidence presented, however, must compel a reasonable fact-finder to conclude that the harm suffered by an applicant was motivated, at least in part by, a protected ground. *Borja,* 175 F.3d at 736.

In the instant case, the BIA concluded that Girma "did not establish by sufficient evidence that those who harmed her were motivated at least in part by a protected ground." Particularly important in this conclusion, was the BIA's determination that Girma failed to adequately establish who attacked her. The BIA reached this conclusion because Girma admitted in her evidentiary hearing that her persecutors "could have been government officials or common criminals." The BIA also found that Girma did not sufficiently establish that her persecutors were motivated by her membership in the AAPO or political opinion, rather than her

6

financial status as a business woman. The BIA reached this conclusion upon a finding that the record indicated that Girma's persecutors were interested in her money and only began to harm her when she indicated that she could not pay the ransom sum they demanded from her. Furthermore, the BIA noted that Girma "acknowledged that she fears future harm from the government because the government believes that the respondent has money."

Girma contends that in reaching its decision, the BIA erred in its mixed motive analysis by requiring her to demonstrate, to the exclusion of all other motivating factors, that her persecutors were motivated by a protected ground. Girma bases her argument concerning exclusivity of motivation upon a single sentence in the BIA decision which reads: "In addition, she did not sufficiently establish that her attackers were motivated by the respondent's membership in the All Amhara People's Organization ("AAPO") or political opinion, rather than her financial status as a business woman."

Although this sentence, read alone, may appear at first to support Girma's argument, when read in the context of the entire BIA decision, Girma's argument fails. In its decision, the BIA acknowledged that it was employing a mixed motive analysis, and that under this inquiry, the predominant motive for the abuse is not determinative. The BIA further acknowledged that an applicant for asylum must present evidence sufficient for one to reasonably believe that the harm suffered was motivated in meaningful part by a protected ground. A mixed motive analysis, by its very nature, requires that there be more than one possible factor motivating the persecutor. Here, the BIA examined motivations based upon economics, political opinion and membership in a social group. The BIA also acknowledged that Girma testified that she was kidnaped,

7

questioned, beaten and raped on account of her AAPO membership, but found that "the record indicate[d] that the respondent's attackers were interested in the respondent's money and only began to harm her when she indicated that she could not pay the ransom sum." Although an applicant is not required to present evidence showing, to the exclusion of all other factors, that the persecutor was motivated by a protected ground, the evidence must still be of such weight that it compels the fact-finder to conclude that the applicant suffered past persecution or has a well-founded fear of future persecution on account of a protected ground. *Borja,* 175 F.3d at 735.

After a complete review of the record, the BIA determined that Girma "did not establish by sufficient evidence that those who harmed her were motivated at least in part by a protected ground." The BIA's use of the phrase "rather than," was not an expression of a mutual exclusivity standard between protected and unprotected grounds but an explanation of its findings concerning the sufficiency of the evidence relative to multiple possible motivating grounds, two of which are protected and one which is not. The analysis performed by the BIA was consistent with a mixed motive inquiry's requirements under *Borja*.

### B. Substantial Evidence

Girma maintains that she has satisfied her evidentiary burden under *Elias-Zacarias* by providing *some* evidence, both direct and circumstantial, that her persecutors were motivated in part by a protected ground. *Elias-Zacarias* involved a Guatemalan native who fled his country to avoid conscription by Guatemalan guerillas. The issue before the Court was whether forced conscription by a guerilla organization necessarily constituted persecution. At his

8

asylum and withholding of deportation hearing before the IJ, Elias-Zacarias admitted that he did not want to join the guerillas for fear of retaliation from the government. The IJ ultimately denied his application and the BIA affirmed the IJ's decision. On appeal, the Ninth Circuit reversed the BIA's decision and held that a guerilla organization's coercive acts of conscription constitute persecution on account of political opinion because resisting conscription is, in effect, expressing a political opinion contrary to that of the persecutor, whose political motive underlies the coercive acts.

The Supreme Court reversed the Ninth Circuit and held that conscription by coercive acts does not necessarily constitute persecution on account of political opinion, as even a person who supports a guerilla organization might resist recruitment for a variety of reasons unrelated to any political opinion. *Elias-Zacarias,* 502 U.S. at 482, 112 S. Ct. at 815-16. The Court did not decide whether Elias-Zacarias's failure to take sides with any political faction constituted the affirmative expression of a political opinion. The Court did hold, however, that even assuming Elias-Zacarias's failure to politically align himself with one side or the other constituted a political opinion, he must still "establish that the record also compels the conclusion that he has a 'well-founded fear' that the guerillas will persecute him *because of* that political opinion, rather than because of his refusal to fight with them." *Elias-Zacarias,* 502 U.S. at 483, 112 S. Ct. at 816. (emphasis in original). In answer to Elias-Zacarias's objection that he could not provide direct proof of his persecutor's motives, the Court held that direct proof was not required, but rather *some* evidence of it, direct or circumstantial,

9

and in order to warrant reversal of the BIA's determination, the evidence presented must be "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Elias-Zacarias,* 502 U.S. at 483, 112 S. Ct. at 816-17.

Reversal of a BIA determination under a substantial evidence standard does not hinge upon the quantity of evidence presented, but rather the quality. To reverse the BIA's determination, the evidence presented must compel a reasonable fact-finder to conclude that Girma suffered past persecution or has a well-founded fear of future persecution because of a protected ground. *Id.* Although Girma unquestionably presented *some* evidence that her persecutors were motivated by a protected ground, the record also contains evidence which questions its credibility. It remains for the BIA, however, to determine whether the evidence is sufficient to warrant a grant of asylum. *Rivas-Martinez,* 997 F.2d at 1148. Here, after conducting a complete review of the record, the BIA properly applied the mixed motive analysis and found the evidence presented to be insufficient to reasonably conclude that the harm suffered by Girma was motivated, at least in part, on account of her membership in a particular social group, her actual or imputed political opinions, or any other protected ground. Any disagreement we might have with the BIA's evaluation of the facts is not a sufficient ground for reversal. A reasonable fact-finder could have found the evidence presented by Girma sufficient to establish past persecution or a well-founded fear of future persecution. We do not find, however, that the evidence presented would compel a fact-finder to do so. Accordingly, we find that the BIA decision reflects a proper application of the mixed motive standard and is supported by substantial evidence.

10

**CONCLUSION**

For the reasons stated above, the decision of the BIA is affirmed.

AFFIRMED.