IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 15, 2008

Charles R. Fulbruge III
Clerk

No. 06-60545

Ling Lin

Petitioner

v.

Michael B. Mukasey, US Attorney General,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
A97-743-019

Before JONES, Chief Judge, and GARWOOD, and JOLLY, Circuit Judges.

PER CURIAM:[*]

Ling Lin (Lin), a citizen of the People's Republic of China, seeks review of the Board of Immigration Appeal's (BIA) order affirming the immigration judge's (IJ) decision to deny her application for asylum. She asserts that she fears persecution under her country's population control policy if she is removed. For the reasons stated below, we affirm the BIA's order of removal.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## FACTS AND PROCEEDINGS BELOW

Lin was born on December 26, 1984, in the Fujian Province, Houdong Village, Tantou Town, Changle City, China. While attending the International Language School there, she met and fell in love with Qing Lin, and the couple wanted to marry. However, under Chinese law a woman cannot marry before the age of twenty-three, while a man cannot marry until he is twenty-five. As neither Lin nor her boyfriend was of age at the time, they could not marry legally. However, Lin's parents allowed Qing Lin to move into their home with Lin, despite the fact that cohabitation is also illegal under Chinese law.

The family planning officers in Lin's village discovered that she was living with her boyfriend. Both cohabitation and pregnancy outside of marriage are illegal in China because they violate the Laws of Marriage and the country's single child family-planning policy. The officers placed Lin and her boyfriend on a list of persons cohabiting illegally and classified Lin as an unmarried pregnant woman. However, she was not in fact pregnant, and, indeed, so far as this record shows, she never has been pregnant. Shortly thereafter, on December 1, 2003, Lin received a notice informing her that she must report on December 9 for a pregnancy examination. The notice indicated that if she failed to report, she would be fined 3,000 R.M.B., and if she failed to report after a second notice, she would be subject to sterilization. Lin testified that after receiving this notice, she was afraid to go back to her home and school. She left her home December 4, 2003 and then left China December 6, 2003. In a statement in support of Lin's application for asylum, Lin's parents indicated that they helped Lin leave China at this point because they feared that she would be forcibly sterilized. She came to the United States in order to seek political asylum. Lin testified that her parents had told her (when they told her is not stated) that at some unspecified time after December 9, 2003 the family planning committee went to her parents' house, questioned her parents about where she had gone,

and provided them with a second notification requiring her to again appear for a pregnancy examination at some specified time (not stated in the record). There is no evidence of any mention of sterilization on this occasion. This post-December 9, 2003 visit by the family planning committee is not mentioned in Lin's parents' February 2004 written statement or in Lin's asylum application.

Lin entered the United States through Hidalgo, Texas on December 26, 2003. She was detained and issued a Notice to Appear on December 27, 2003, which charged her with being subject to removal in violation of 8 U.S.C. § 1182(a)(6)(A)(I). Lin admitted the charges, conceded removability, requested relief in the form of political asylum and withholding of deportation, and requested relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (the CAT).

On February 9, 2005, an IJ conducted a hearing on the merits of Lin's application. Lin testified that she left China because she sought freedom and because she would be persecuted if she stayed in China based on the one-child policy. She also explained that she feared persecution in part because of the experiences of her family members. The local family planning committee sterilized one of her sisters-in-law after she had two children, and placed her other sister-in-law on an IUD after the birth of her daughter. Furthermore, after her mother had Lin's two brothers, she was placed on an IUD. When the IUD somehow got lost, Lin was born. A few months later, the family planning committee forced Lin's mother to be sterilized. Lin remembers that as a little girl, she saw the scars that the sterilization surgery left on her mother. Lin testified that because of her family's experiences with the family planning committee, when she received the notice requiring her to appear for a pregnancy examination on December 9, she was afraid of what they would do to her, so she did not go. Lin testified that she was not pregnant when she received the notice. She indicated that she fears that if this country sends her back to China, she will

be forcibly sterilized because she did not show up for the pregnancy examination after two notices. She also testified that even if she is not sterilized immediately upon her return to China, eventually she will be placed on an IUD and then sterilized because she intends to marry and have more than one child.

The IJ found that Lin's subjective fear was credible, but that it was not objectively reasonable. The IJ stated that because Lin was not pregnant at the time she was told to report for her pregnancy examination, there was no need to skip the examination. The IJ further stated that according to evidence submitted by Lin, effective October 1, 2003, the Chinese marriage laws made the previously mandatory premarital health examinations optional. The IJ also noted that China is beginning to loosen its one-child policy. Further, the IJ indicated that although abortions remain common throughout China, forced abortions are rare and illegal and the majority of the pressure for women to obtain abortions stems from family and society, not the government. The IJ found that Lin had not proven past persecution, that the evidence was insufficient to show that future persecution should occur, and that her fear of future persecution "is not objectively reasonable." The IJ also determined that the heightened requirement for withholding of removal had not been met, and that Lin had not established that she would be tortured upon her return to China. Therefore, the IJ ordered that Lin's application for asylum, withholding of removal, and relief under CAT be denied and ordered Lin removed to China.

Lin appealed the IJ's decision to the BIA. On May 9, 2006, the BIA affirmed the IJ's decision, concluding that the IJ did not err in determining that Lin failed to meet her burden of showing past persecution or a reasonable possibility of suffering future persecution on account of a protected ground if removed to China. Further, the BIA stated that Lin failed to present any evidence that she was fined as threatened in the notice. The BIA noted that Lin was not similarly situated to her mother or sisters-in-law because she did not

have children and has never been pregnant. It also concluded that Lin failed to satisfy the clear probability standard of eligibility required for withholding of removal. Finally, the BIA concluded that Lin failed to show that it was "more likely than not" that she would suffer persecution or torture if she returned to China, so she did not qualify for protection under the CAT. Lin filed a timely petition for review with this court.

## DISCUSSION

We limit our discussion to the issue raised on appeal: Whether substantial evidence supports the BIA's denial of Lin's asylum claim.[1] For the reasons stated below, we affirm the BIA's order dismissing Lin's asylum claim.

### A. Asylum

The United States Attorney General and the Secretary of Homeland Security have the discretion to grant asylum to "refugees." 8 U.S.C. § 1158(b)(1)(A); Jukic v. I.N.S., 40 F.3d 747, 749 (5th Cir. 1994). The term "refugee" includes a person who is outside of his or her country and is unable or unwilling to return "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The definition includes those who have been persecuted under a coercive population control program, or who legitimately fear such persecution. 8 U.S.C. §1101(a)(42)(B). The definition provides, in pertinent part:

> "For purposes of determinations under this chapter, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive

---

[1] Although Lin mentions withholding of deportation in the conclusion of her brief, she does not brief the issue of withholding, nor does she brief the issue of relief under the CAT. By failing to brief these issues, Lin has waived and abandoned them. See Soadjede v. Ashcroft, 324 F.3d 830, 833 (5th Cir. 2003); see also Calderon-Ontiveros v. I.N.S., 809 F.2d 1050, 1052 (5th Cir. 1986).

population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion." Id.

Therefore, to reverse the BIA's determination that Lin is ineligible for asylum, the evidence must compel a reasonable fact-finder to conclude that Lin suffered past persecution or has a well-founded fear of future persecution on account of a protected ground. 8 C.F.R. § 1208.13(b); Girma v. I.N.S., 283 F.3d 664, 669 (5th Cir. 2002) (citing I.N.S. v. Elias-Zacarias, 112 S. Ct. 812, 815-17 (1992)). Lin does not argue that she has been persecuted in the past; she argues that she meets the definition of refugee because she has a well-founded fear that she will be forced to undergo involuntary sterilization for her refusal to comply with (or resistance to) a coercive population control program. See 8 U.S.C. § 1101(a)(42)(B). "To establish a well-founded fear of future persecution, an applicant must demonstrate a subjective fear of persecution, and that fear must be objectively reasonable." Chen v. Gonzales, 470 F.3d 1131, 1135 (5th Cir. 2006) (emphasis added; internal quotation marks and citations omitted). Because the IJ credited Lin's testimony regarding her subjective fear of persecution, that is not at issue; the issue in this case is the objective reasonableness of her fear. The objective prong requires the applicant to establish that a reasonable person facing the same circumstances would fear persecution if deported. Id. The applicant does not need to prove that it is more likely than not that she will be persecuted in her home country. I.N.S. v. Cardoza-Fonseca, 107 S. Ct. 1207, 1222 (1987). She need only show that persecution is a "reasonable possibility." Id. at 1217.[2]

---

[2] See also id. at 1221:
"There is obviously some ambiguity in a term like 'well-founded fear' which can only be given concrete meaning through a process of case-by-case adjudication.

B.    Jurisdiction and Standard of Review

This court has jurisdiction over this asylum case under 8 U.S.C. § 1252(b)(2).  When considering a petition for review, this court has the authority to review only the BIA's decision, unless the IJ's decision has some impact on the BIA's decision.  Mikhael v. I.N.S., 115 F.3d 299, 302 (5th Cir. 1997).  This court may review the IJ's findings and conclusions if the BIA adopts them.  Id.  In this case, the BIA affirmed the IJ's decision based upon the reasons set forth therein, which gives this court authority to review the IJ's decision.  Id.

On a petition for review of a BIA decision, this court reviews factual findings for substantial evidence and questions of law de novo.  Lopez-Gomez v. Ashcroft, 263 F.3d 442, 444 (5th Cir. 2001).  The substantial-evidence standard for setting aside a BIA decision is a high one to meet.  Under the substantial-evidence standard, the BIA's conclusion must be based on the evidence presented and its decision must be substantially reasonable.  Carbajal-Gonzalez v. I.N.S., 78 F.3d 194, 197 (5th Cir. 1996).  To reverse the BIA's determination that Lin is ineligible for asylum, Lin has the burden of showing that the evidence compels all reasonable fact-finders to conclude that she has a well-founded fear of future persecution based on her resistance to China's population control policies.  See Elias Zacarias, 112 S. Ct. at 815; Chen, 470 F.3d at 1134; Li v. Ashcroft, 356 F.3d 1153, 1157 (9th Cir. 2004); Girma, 283 F.3d at 669.

C.    Analysis

Lin argues that she is a refugee and qualifies for asylum because she has a well-founded fear that she will be forced to undergo involuntary sterilization upon returning because she failed to attend her mandatory pregnancy tests.  She

---

In that process of filling "any gap left, implicitly or explicitly, by Congress," the courts must respect the interpretation of the agency to which Congress has delegated the responsibility for administering the statutory program."

also argues that she is entitled to asylum because even if she is not sterilized immediately upon returning to China, she will eventually be put on an IUD and sterilized because she wants to marry and have multiple children. The BIA and IJ found that Lin was not eligible for asylum because her fear of persecution was not objectively reasonable.

Substantial evidence supports the BIA's and IJ's conclusions that Lin's fear was not objectively reasonable. First, Lin was not pregnant and does not indicate that she thought she was pregnant at the time the family planning committee instructed her to appear for a pregnancy examination. Therefore, she had no reason to fear punishment or persecution based on a pregnancy out of wedlock. Furthermore, although her brief on appeal discusses incidents of traumatic, "rape-like" pregnancy examinations described in cases from our sister circuits, she does not present any evidence that her examination would have been traumatic. See Li, 356 F.3d at 1158 n.4. She actually testified that she did not know how her examination would have been conducted.

The evidence also does not compel a reasonable fact-finder to conclude that Lin has a well-founded fear of sterilization upon her return to China. Lin does not provide any evidence that women (to say nothing of women who are not and have never been pregnant) who simply fail to take required pregnancy tests, have actually been sterilized. She also does not present evidence that the family planning committee in her town fined her for failing to appear for her first appointment, that they have issued a warrant for her arrest, or that they actually would sterilize her if she returned home. See Zhang v. Attorney General, 128 Fed. Appx. 287, 289 (3d Cir. 2005) (holding that an alien had no well-founded fear of persecution for resisting China's coercive population control program in part because he was not charged with a crime and there was no warrant issued for his arrest). She also does not refer to any law or regulation that requires or allows Chinese authorities to sterilize women who fail to attend

mandatory pregnancy examinations. Lin even testified that she does not know for certain whether she will be sterilized upon returning to China for missing her pregnancy examination appointments.[3] Thus, there is no evidence that the family planning committee will follow through with its December 1, 2003 threat of sterilization (in the event Lin should "twice" not "show up") if Lin returns to China.

Furthermore, this court could not find and the parties do not cite any case indicating that an alien should be granted asylum on the basis of one conditional "threat" contained in a notice to appear. See Boykov v. I.N.S., 109 F.3d 413, 417 (7th Cir. 1997) (upholding the BIA's conclusion that an alien's "account of vague threats, without more is not a basis for fearing persecution in the future"). Courts generally have concluded that aliens have a well-founded fear of future persecution in cases that involve more than mere threats. See, e.g., Lim v. I.N.S., 224 F.3d 929, 934-35 (9th Cir. 2000) (holding that an alien had a reasonable fear of future persecution because he had received death threats, was followed, appeared on a death list, and because his colleagues who received similar threats were killed). In a similar case cited by Lin in support of her arguments, the Ninth Circuit held that there was not substantial evidence to support the BIA's denial of asylum for a Chinese alien, Li, who demonstrated a reasonable fear of future persecution. Li v. Ashcroft, 356 F.3d at 1158. Moreover, the evidence there showed that Li was being retaliated against because of her public defiance of and resistance to the coercive population control

---

[3] This seems especially unlikely in the case of Lin, who is now 23 years old, is not cohabiting with anyone (there is no evidence that Lin cohabited with anyone after December 4, 2003, or that she has kept in touch with her former boyfriend), and has never been pregnant, whose first pregnancy examination was scheduled for a date when she was already outside of China, and whose subsequent examination was noticed and to take place while she was no longer living in China. And, there is no evidence that Chinese law, regulation, or custom authorizes a notice requiring appearance at a pregnancy examination to be given to a person who has already left the country.

program. Id. at 1156, 1158. Li was threatened by the local family planning committee, which told her that she would have to take pregnancy tests and that if she were pregnant, her child would be aborted and her boyfriend sterilized. Id. These threats were corroborated by the fact that she had already experienced a retaliatory and extremely traumatic and forcible pregnancy examination, that she was issued a government document indicating that she and her boyfriend could never have children, and that a warrant was issued for her arrest. Id. at 1159. One threat from the family planning committee does not demonstrate that Lin's situation is analogous to Li's or that the conclusions of the BIA and IJ are not supported by substantial evidence.

There is no evidence of forced sterilization of any woman, like Lin, who has never had any children and is not and never has been pregnant. Thus, she is not similarly situated to her mother and sisters-in-law who have been sterilized and placed on IUDs after having children. Finally, Lin not only is not now cohabiting, she is now old enough to marry in China, so she will not face the same treatment for illegal cohabitation upon returning to China if she chooses to marry. Therefore, the evidence does not suggest that Lin's fear of forced sterilization is objectively reasonable.

CONCLUSION

We hold that there is substantial evidence to support the BIA's determination that Lin is ineligible for asylum. The evidence does not compel a reasonable fact-finder to conclude that Lin has a well-founded fear of future persecution. Elias-Zacarias, 112 S. Ct. at 817. The BIA's conclusion is based on evidence presented and is substantially reasonable. Carbajal-Gonzalez, 78 F.3d at 197. Therefore, the holding of the BIA is

AFFIRMED.