IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 6, 2009

Charles R. Fulbruge III
Clerk

No. 08-60246
Summary Calendar

KYAW MYINT, also known as Kyaw Kyaw Myint,

Petitioner,

V.

MICHAEL B. MUKASEY, U.S. ATTORNEY GENERAL,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A98 553 731

Before KING, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

Kyaw Myint petitions for review of a final order of removal of the Board of Immigration Appeals (BIA). The BIA affirmed the immigration judge's (IJ) decision denying Myint's applications for asylum under 8 U.S.C. § 1158, withholding of removal under 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture (CAT), 8 C.F.R. §§ 1208.16(c), 1208.18. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I

Myint is a native and citizen of Burma who arrived at the port of entry in Laredo, Texas without a valid entry document in February 2005. Three days after his arrival, an asylum officer conducted a credible-fear interview. Under oath, Myint stated that he came to the United States seeking political asylum. He stated that soldiers in Burma had harassed him and threatened him with arrest and detention because he opposed the government and was a member of the Chin National Front (CNF).

In his asylum application, Myint claimed that he was seeking asylum based on his race and political opinion. Myint stated that he was beaten during an encounter between the supporters and opponents of Daw Aung San Suu Kyi—a female leader of the National League for Democracy Party (NLD). This violent incident is famously referred to as the "Depeyin incident." Myint explained that "during the confusion [he] got hit in the right side of [his] face" but was able to escape further harm. He called his wife and parents to let them know what had happened but avoided returning to his home because he knew the "military intelligence" would be looking for him. Myint then left the country for Bangkok.

While Myint was hiding in Bangkok, he contacted his family in Burma and learned that the "military intelligence" had interrogated his wife about Myint's whereabouts and had "interrogate[d] and threaten[ed]" his parents. According to Myint, "[t]he harassment and mistreat[ment] of [his] wife reached a point where [she] got scared" and ran away from Burma.

Myint also claimed that the information recorded at his credible-fear interview was incorrect and that it was "very obvious" that the officer recording his statements was "confused." Myint noted that the officer wrote that he was threatened for being a "CNA member," but that "CNA is for Chin ethnic and I am not Chin, but Sino-Shan." Myint stated that "[a]lthough I was allowed to review the paper, my English was very weak and it was hard for me to read

script style writing." Thus, he claims that he signed the paper, believing the officer had written what Myint had told him, and only realized the report was inaccurate when he reviewed the statement with his attorney.

In his testimony before the immigration court, Myint stated that there was "no past persecution whatsoever" and that his claim for asylum and related relief was based on a fear of future persecution. Myint said that, since arriving in the United States, he had been calling home every few months to check on things and learned that, two months prior to his hearing, the "military intelligence" had come to his house and asked about him. He testified that his parents also told him that other people who participated in the Depeyin incident had been killed, but Myint did not know how his parents got this information.

The IJ found Myint not to be credible. The IJ based his adverse credibility determination in part on Myint's failure to corroborate any of his claimed political activities in Burma, which allegedly included (1) passing out pamphlets for the NLD when he was in high school, (2) meeting with fellow students at the Government Technical College (GTC), and (3) participating in the Depeyin incident. The IJ specifically noted that Myint did not produce any of the pamphlets he formerly distributed and that his alleged distribution could not have been significant because he subsequently "was allowed to enter college without any apparent difficulty." The IJ further noted that Myint did not produce any medical documentation to confirm the injury he allegedly sustained during the Depeyin incident.

With respect to the Depeyin incident, the IJ found corroboration particularly necessary because it was the only experience described by Myint that "even remotely approache[d] the level necessary to establish eligibility for asylum or withholding [of removal]." The IJ further found that the incident was "well-known," "well documented," and involved more than a hundred people, and therefore it would be "easy for someone to claim involvement in that incident and to provide some details regarding the incident." The IJ also noted that

corroborative evidence should have been available because (1) Myint still had immediate family in Burma, as well as friends at the GTC, any of whom should have been able to provide him with affidavits or other supporting documents to confirm his story, (2) Myint had an "editor cousin" in the United States who should have been able to confirm parts of the story but who did not appear to testify, and (3) Myint had over a year and a half since arriving in the United States to obtain corroborating documents, and if he anticipated seeking asylum on arrival as he claimed, then he could and should have been gathering documents before his arrival.

The IJ also found that the record evidence contradicted Myint's unsupported claim that he would be detained if he returned to Burma. Specifically, the IJ noted that "in all of the materials admitted into evidence" relating to the Depeyin incident, there was no report indicating that "persons who escaped from immediate arrest [were] still being arrested," and that reports instead suggested that "actions" were only being taken against the NLD "leaders," and not unofficial members like Myint. The IJ further stated that there was "no evidence of any adverse action . . . taken against [Myint's] family [in Burma], except perhaps for some questioning as to [Myint's] whereabouts." Therefore, the IJ stated that it was "too big a jump for this Court to make to assume that the Government wants to torture and kill [Myint] simply because they are asking about and trying to locate him."

The IJ also based his adverse credibility determination on Myint's "disagree[ment] with what was said at the initial credible[-]fear interview." The IJ wrote that the credible-fear document indicated that Myint "felt he was in danger because of his past (at least suspected) membership in CNF; there [wa]s no mention whatsoever of the Depeyin incident or of any of the events/steps [Myint] took thereafter." The IJ rejected Myint's stated explanation that there was confusion during the interview due to Myint's limited knowledge of English because "the interview was conducted in Burmese, with a Burmese interpreter."

The IJ noted that "the discrepancy is not just a single word here or there, but is with the entire statement made by [Myint] to the credible[-]fear officer."

Based on the inconsistencies and lack of corroboration, the IJ found Myint not credible; denied his applications for asylum, withholding of removal, and protection under the Convention Against Torture; and ordered him removed to Burma. The BIA dismissed Myint's appeal, and this petition for review followed.

II

This court reviews factual findings of the BIA and IJ for substantial evidence and questions of law de novo.[1] The conclusion that an applicant is not eligible for asylum, withholding of removal, or relief under the CAT is a factual conclusion,[2] and the "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."[3] In order to reverse the BIA, this court must decide "not only that the evidence supports a contrary conclusion, but also that the evidence compels it."[4] The applicant must show "that the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion."[5]

III

To be eligible for asylum, an applicant has the burden of proof to establish that he is a "refugee."[6] A person is a refugee if he has suffered past persecution

---

[1] Zhu v. Gonzales, 493 F.3d 588, 594 (5th Cir. 2007).

[2] See Chen v. Gonzales, 470 F.3d 1131, 1134 (5th Cir. 2006) ("We apply [the substantial evidence test] in reviewing an IJ's factual conclusion that an applicant is not eligible for asylum, withholding of removal, and relief under the Convention Against Torture." (citations omitted)).

[3] Id. (quoting 8 U.S.C. § 1252(b)(4)(B)).

[4] Id. (quoting Zhao v. Gonzales, 404 F.3d 295, 306 (5th Cir. 2005)).

[5] Id. (citing Zhao, 404 F.3d at 306).

[6] 8 C.F.R. § 1208.13(a).

or has a well-founded fear of future persecution.[7] Because Myint testified that there was "no past persecution whatsoever," we consider only whether Myint established a well-founded fear of future persecution.

Proof of a well-founded fear of future persecution requires a showing of a subjective fear of persecution that is objectively reasonable.[8] An applicant need not show that he will be persecuted if returned to his country, but only that persecution is a "reasonable possibility."[9] To establish the objective reasonableness of a well-founded fear of persecution, the applicant must show: "(1) he possesses a belief or characteristic a persecutor seeks to overcome by means of punishment of some sort; (2) the persecutor is already aware, or could become aware, that the alien possesses this belief or characteristic; (3) the persecutor has the capability of punishing the alien; and, (4) the persecutor has the inclination to punish the alien."[10]

To qualify for withholding of removal, an alien must show a "clear probability" of persecution in the proposed country of removal.[11] Similarly, to establish entitlement to protection under the CAT, an applicant must show that it is more likely than not that he would be tortured if removed to the proposed country of removal.[12] The "clear probability" standard for withholding of removal and the CAT protection is more rigorous, and thus more difficult for an

---

[7]  8 C.F.R. § 1208.13(b).

[8]  Chen, 470 F.3d at 1135; see also Tesfamichael v. Gonzales, 469 F.3d 109, 113 (5th Cir. 2006) ("The alternative asylum ground, a well-founded fear of persecution, results when a reasonable person in the same circumstances would fear persecution if deported.").

[9]  Chen, 470 F.3d at 1135 (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 440 (1987)).

[10]  Id. at 1135-36 (quoting Zhao, 404 F.3d at 307).

[11]  Cardoza-Fonseca, 480 U.S. at 430-31; Girma v. INS, 283 F.3d 664, 667 (5th Cir. 2002).

[12]  See 8 C.F.R. § 1208.16(c)(2).

alien to meet, than the "well-founded fear" standard for asylum.[13] Accordingly, failure to satisfy the lower standard of proof required to establish eligibility for asylum necessarily results in a failure to demonstrate eligibility for withholding of removal and protection under the CAT.[14]

IV

The record does not compel reversal of the agency's finding that Myint failed to establish a well-founded fear of future persecution due to, among other things, the inconsistency between his statements at his initial credible-fear interview and his subsequent written declaration and testimony.[15] At his initial credible-fear interview, Myint stated that he had been threatened and harassed by soldiers in Burma on account of his membership in the CNF. By contrast, in his written application and testimony, Myint claimed that he had been harassed by soldiers in Burma due to his Sino-Shan background and involvement in the NLD and the Depeyin incident. Further, Myint's stated explanation in his declaration—that he did not understand what the interviewing officer wrote in English and that the officer was "confused" about his story—is unpersuasive. As the IJ noted, during his credible-fear interview, Myint had a Burmese interpreter and never raised any concerns of a misunderstanding at that time.

Additionally, Myint's subjective fear of future prosecution is not supported by objective evidence. Myint did not submit any evidence regarding his distribution of pamphlets in high school, medical documentation of the injury he claimed to have received during the Depeyin incident, or any affidavits from family or friends, despite the fact that Myint claims to be in regular contact with his immediate family. Instead, Myint submitted only documentary evidence on Burma that the IJ gave little weight because the articles and reports were

---

[13] See INS v. Stevic, 467 U.S. 407, 424-25 (1984); Girma, 283 F.3d at 666-67.

[14] See Girma, 283 F.3d at 667.

[15] See Chun v. INS, 40 F.3d 76, 78-79 (5th Cir. 1994).

general in nature. Further, Myint does not claim to be an NLD leader or that his family has experienced any persecution besides questioning about Myint's whereabouts.

Because the evidence does not compel a reasonable adjudicator to conclude that Myint has a well-founded fear of future persecution, we affirm the IJ's decision.

AFFIRMED.