# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 30, 2009

No. 07-60712

Charles R. Fulbruge III
Clerk

ALEXEY KORNEENKOV; OLESYA KORNEENKOVA

Petitioners

v.

ERIC H HOLDER, JR., U S ATTORNEY GENERAL

Respondent

Petition for Review of an Order
of the Board of Immigration Appeals

Before JONES, Chief Judge, and PRADO and HAYNES, Circuit Judges.

PER CURIAM:[*]

Petitioners Alexey Korneenkov ("Alexey") and Olesya Korneenkova ("Olesya") (collectively "the Korneenkovs") challenge the Board of Immigration Appeals ("BIA") order dismissing their appeal of an Immigration Judge's ("IJ") denial of their applications for asylum.[1]  The Korneenkovs argue that the BIA

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The Korneenkovs also argue on appeal that they are eligible for withholding of removal under Section 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3), and the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85. However, the Korneenkovs did not appeal the Immigration Judge's denial of their applications

erred in determining that they are not eligible for asylum from their native country, Russia, because they were not persecuted on statutorily protected grounds. Specifically, they assert that (1) they were persecuted in Russia because of their status as mentally disabled persons and (2) mentally disabled persons constitute a "social group" for asylum purposes. Because we hold that the Korneenkovs were not persecuted as defined by applicable law, we AFFIRM the BIA's order denying asylum and need not reach the "social group" issue.

The Korneenkovs further challenge the BIA's denial of their motion to remand to the IJ on the ground of ineffective assistance of counsel. We agree with the BIA's conclusion that the Korneenkovs were not prejudiced by any alleged deficiency in their counsel's performance and therefore AFFIRM the BIA's denial of their motion to remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

The Korneenkovs, a married couple, are natives and citizens of Russia who were admitted to the United States in September 2005 as non-immigrant visitors for pleasure with authorization to remain in the United States no later than March 5, 2006. Rather than leaving by that date, the Korneenkovs remained in the United States without authorization by the Department of Homeland Security ("DHS"). Accordingly, in April 2006, the DHS served the Korneenkovs with a notice to appear, charging them as removable under Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. § 1227(a)(1)(B). The Korneenkovs filed applications for asylum, alleging past

---

for withholding of removal on either of these grounds. Accordingly, we lack jurisdiction to consider these issues on appeal. *See* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if—the alien has exhausted all administrative remedies available to the alien as of right . . . .").

persecution on account of membership in a social group consisting of mentally disabled persons.

At a hearing before an IJ, the Korneenkovs conceded that they were removable from the United States as charged. At a subsequent hearing on the merits of their applications for asylum, they described their experiences in Russia.

Alexey testified as follows: As a child, he attended a government-run school for mentally disabled children known as an "Internat." At the Internat, an intoxicated teacher struck him in the head with a wooden hanger, causing an injury that required stitches. His parents complained to the director of the Internat, but the director did not discipline the teacher and warned Alexey's parents that they would have trouble if they told anyone else about the incident. Although Alexey acknowledged that that was the only time a teacher ever abused him at the Internat, he testified that teachers threatened students and gave some students medicine that caused them to fall asleep during lessons. He also testified that he once witnessed a female student being raped.

After leaving the Internat, Alexey worked for a construction company. On one occasion, Alexey's supervisor, who was intoxicated and unhappy with Alexey's work, pushed a hammer to his head, hit him, and stole money from him. Alexey further claimed that his co-workers disliked him because of his disabilities.

Alexey left the construction company and took a job with another company. While Alexey was employed there, his supervisor, who was stealing from the company, coerced him into helping her steal. She threatened to kill Alexey and his family if he told anyone that she was stealing, and she called his home and screamed at Olesya that they were "a family of 'idiots' and 'imbeciles.'"

Finally, Alexey testified that in 2004, four police officers stopped him and asked for his identification, which he was legally required to carry with him and

3

for which Russian police could check at any time. When Alexey did not produce his identification—which he had left at work—the police officers pulled his arm back, causing his spine to "crack[]," and took him to the police station. At the station, the police seized his belongings, initially refused to allow him to use the telephone, forced him to clean the toilets, beat him until he lost consciousness, threw water on him to wake him up, and told him to call his parents to "bring lots of money" for him to be released. They threatened to kill him if his family reported the incident.

Olesya also recounted her experiences in Russia. Olesya testified that when she was a child, children in her school beat her, bit her, pulled her hair, shouted at her, and laughed at her. She also testified—without elaboration—that teachers abused her and that despite her parents' requests the school took no corrective action. When asked if she had problems with anyone outside of school, Olesya stated that drunkards picked on her by pointing at her and calling her disabled.

Olesya testified that when she was seventeen years old, two men attempted to rape her while she was on her way home from a store. Olesya had accompanied her mother to the store, and her mother instructed her to wait outside. After some time, Olesya assumed that her mother had left and began to walk home. Near her house, two men approached her and lured her around a corner by telling her that they had puppies to sell. Olesya followed the men, and they took her into a building where they attacked her. The men beat her, attempted to pull off her clothes, and choked her before a bystander came to her aid and caused them to flee. Olesya was promptly hospitalized, and although the police promised to apprehend the suspects, they also informed Olesya's parents that they might have a better chance of finding her attackers themselves. Olesya's attackers were never apprehended.

Olesya's father testified that it was difficult to get good medical treatment for Olesya in Russia and that he did not believe that Alexey and Olesya could live on their own in Russia.

Finally, the Korneenkovs proffered an affidavit from Olesya's mother. In the affidavit, Olesya's mother stated that Olesya was dropped on her head at birth and corroborated Olesya's accounts of school children picking on her, her attempted rape, and Alexey's negative experiences at work.

## B.    Procedural History

The IJ rendered an oral decision denying the Korneenkovs' applications for asylum, finding that the incidents that they recounted were not sufficiently severe to rise to the level of persecution or were not on account of their mental disabilities. Specifically, with regard to Olesya's attempted rape, the IJ found that there was insufficient evidence that the perpetrators targeted her because of her mental disabilities.

After obtaining new counsel, the Korneenkovs appealed the IJ's decision to the BIA and also moved to remand on the basis of ineffective assistance of counsel. Assuming without deciding that mentally disabled persons in Russia constitute a "social group" for asylum purposes, the BIA affirmed the IJ's decision and denied the motion to remand, finding that the incidents that the Korkeenkovs described did not rise to the level of persecution. The BIA also determined that the Korneenkovs failed to demonstrate prejudice from their former counsel's failure to present testimony from Olesya's mother and Dr. Eric Reznik ("Dr. Reznik"), a psychologist. Accordingly, the BIA denied the Korneenkovs' motion to remand. The Korneenkovs timely filed a petition for review. *See* 8 U.S.C. § 1252.

## II. STANDARD OF REVIEW

We review the BIA's resolution of questions of law de novo, "giving considerable deference to the BIA's interpretation of the legislative scheme it is

entrusted to administer." *Zhu v. Gonzales*, 493 F.3d 588, 594 (5th Cir. 2007) (internal quotation marks omitted). "We review factual findings of the Board to determine if they are supported by substantial evidence in the record." *Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997). Under this stringent standard, we will reverse the BIA's decision "only when the evidence is 'so compelling that no reasonable fact finder could fail to find' the petitioner statutorily eligible for relief." *Roy v. Ashcroft*, 389 F.3d 132, 138 (5th Cir. 2004) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992)). Mere disagreement with the BIA's factual findings is not a sufficient ground for reversal; we may reverse only if the evidence compels a conclusion opposite to that reached by the BIA. *See Girma v. INS*, 283 F.3d 664, 669 (5th Cir. 2002); *Mikhael*, 115 F.3d at 304; *see also Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 622 (1966) ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."). "Even though we have authority to review only the BIA's decision, we may consider the IJ's decision to the extent that it influenced the BIA." *Masih v. Mukasey*, 536 F.3d 370, 373 (5th Cir. 2008).

"As a general matter, the determination that an alien is not eligible for consideration for asylum is a factual conclusion reviewed under the substantial-evidence standard." *Thuri v. Ashcroft*, 380 F.3d 788, 791 (5th Cir. 2004); *see also Zamora-Morel v. INS*, 905 F.2d 833, 838 (5th Cir. 1990). The same is true of the more specific determination of whether the alien suffered persecution on account of a statutorily enumerated ground. *Thuri*, 380 F.3d at 791; *see also Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 350-51 (5th Cir. 2002).

We review the BIA's denial of a motion to remand for abuse of discretion. *Castillo-Perez v. INS*, 212 F.3d 518, 523 (9th Cir. 2000).

### III. ANALYSIS

1.     **Denial of Asylum**

To qualify for the discretionary relief of asylum, an alien must be a "refugee." *Tesfamichael v. Gonzales*, 469 F.3d 109, 113 (5th Cir. 2006); *see* 8 C.F.R. § 1208.13(a). A refugee, in turn, is a person unable or unwilling to return to his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *accord Tesfamichael*, 469 F.3d at 113. Past persecution constitutes "harm inflicted on [an] alien on account of a statutorily enumerated ground by the government or forces that a government is unable or unwilling to control." *Tesfamichael*, 469 F.3d at 113 (citing 8 C.F.R. § 1208.13(b)(1)). To show a well-founded fear of future persecution, an alien must establish "that a reasonable person in the same circumstances would fear persecution [on account of a statutorily enumerated ground] if deported." *Castillo-Rodriguez v. INS*, 929 F.2d 181, 184 (5th Cir. 1991); *accord Jukic v. INS*, 40 F.3d 747, 749 (5th Cir. 1996). In either case, under the REAL ID Act amendment, 8 U.S.C. § 1158(b)(1)(B)(i),[2] to qualify for asylum, an alien must demonstrate that a statutorily enumerated ground "was or will be at least one central reason for persecuting the applicant."

> Although the INA does not define "persecution," we have defined it as
>
> The infliction of suffering or harm, under government sanction, upon persons who differ in a way regarded as offensive (e.g., race, religion, political opinion, etc.), in a manner condemned by civilized governments. The harm or suffering need not be physical, but may take other forms, such as the deliberate imposition of severe economic disadvantage or the deprivation of liberty, food, housing, employment or other essentials of life.

*Chen v. Gonzales*, 470 F.3d 1131, 1135 (5th Cir. 2006) (quoting *Abel-Masieh v. INS*, 73 F.3d 579, 583 (5th Cir. 1996)). Notably, not every infliction of harm by one person upon another rises to the level of persecution. *See Adedisi v. INS*,

---

[2] The parties agree that the Real ID Act amendment applies in this case.

952 F.2d 910, 913 (5th Cir. 1992) ("The law regulating persecution claims, although humane in concept, is not generous."). As we have observed, "[n]either discrimination nor harassment ordinarily amounts to persecution under the INA, even if the conduct amounts to 'morally reprehensible' discrimination on the basis of race or religion." *Eduard v. Ashcroft*, 379 F.3d 182, 188 (5th Cir. 2004). Similarly, we have noted that

> "[p]ersecution is not a limitless concept. . . . [I]t does not encompass all treatment that our society regards as unfair, unjust or even unlawful or unconstitutional. If persecution were defined that expansively, a significant percentage of the world's population would qualify for asylum in this country—and it seems most unlikely that Congress intended such a result. Persecution must be extreme conduct to qualify for asylum protection."

*Majd v. Gonzales*, 446 F.3d 590, 595 (5th Cir. 2006) (quoting *Al-Fara v. Gonzales*, 404 F.3d 733, 739 (3d Cir. 2005)) (alterations and omission in original). Mistreatment "composed of mere denigration, harassment, and threats" is insufficient. *Eduard*, 379 F.3d at 188.

The Korneenkovs argue that the BIA erred in holding that the incidents they described in their testimony before the IJ do not rise to the level of persecution. However, in so doing they simply repeat the evidence that they presented to the IJ and reassert that the incidents they suffered were sufficiently severe to constitute persecution. This is insufficient to meet their heavy burden on appeal.

Although Alexey may have been harassed at the Internat and his two places of employment, the incidents that he described do not rise to the level of persecution. *Cf. Kapcia v. INS*, 944 F.2d 702, 704-05 (10th Cir. 1991) (upholding BIA's determination that aliens were not persecuted when one was arrested four times, detained three times, beaten once, had his house searched, and was treated adversely at work, and another was twice detained for two days during which time he was interrogated and beaten, had his parents' house searched,

was fired from his job, and was subsequently detained and beaten again). Further, the record contains no evidence that the Russian police who detained Alexey did so because of his mental disabilities. Thus, this incident cannot support his claim that he was persecuted on account of his mental disabilities. *See Elias-Zacarius*, 502 U.S. at 483 ("[S]ince the [INA] makes motive critical, [an alien] must provide *some* evidence of it, direct or circumstantial.").

Olesya has similarly failed to allege past treatment rising to the level of persecution on account of her mental disabilities. Harassment from fellow students and drunkards is insufficient, *see Eduard*, 379 F.3d at 188, and she presented no evidence that her attempted rape—although tragic—was anything more than a random criminal act. As the IJ explained, there is no evidence that Olesya's assailants targeted her because of her disabilities. Moreover, the record indicates both that the Russian police promised to find the assailants (although they were ultimately unable to do so) and that Olesya received prompt medical treatment after the attack.

As explained above, "[u]nder the substantial evidence standard applicable to review of denials of asylum, we must defer to the BIA's factual findings unless the evidence is so compelling that no reasonable fact finder could fail to find otherwise." *Mikhael*, 115 F.3d at 304. Even if a reasonable factfinder *could* have found these incidents sufficient to constitute past persecution, we cannot reverse unless a factfinder would be *compelled* to do so. *See id.* Based on the record before us, we cannot say that the Korneenkovs have provided "evidence [of persecution on account of their mental disabilities] so compelling that no reasonable fact-finder could conclude against it," as is required to reverse the BIA's determination. *See Moin v. Ashcroft*, 335 F.3d 415, 418 (5th Cir. 2003) (internal quotation marks omitted).[3]

---

[3] The Korneenkovs, citing 8 C.F.R. § 208.13(b)(2)(iii), argue on appeal that past persecution claims do not require proof of particularized persecution when an alien can

## 2.    Denial of Motion to Remand

Lastly, the Korneenkovs argue that the BIA abused its discretion by denying their motion to remand to the IJ on the ground of ineffective assistance of counsel. The Korneenkovs argue that their initial counsel was deficient for not calling Olesya's mother and Dr. Reznik to testify before the IJ. They assert that Olesya's mother "would have provided [a] personal account of the social visibility of Mrs. Korneenkova's disabilities" and that Dr. Reznik "could have provided the Court with valuable insight as to the persecution individuals with disabilities suffer in Russia's psychiatric facilities."

"To prevail on a claim of ineffective assistance of counsel at a deportation proceeding, an alien must show (1) ineffective representation and (2) substantial prejudice, which occurred as a result of the ineffective representation." *Miranda-Lores v. INS*, 17 F.3d 84, 85 (5th Cir. 1994) (footnote omitted). To demonstrate substantial prejudice, the Korneenkovs must make a prima facie showing that, but for their previous counsel's failure to call Olesya's mother and Dr. Reznik, they would have been entitled to asylum. *See id*.

We agree with the BIA's conclusion that the Korneenkovs failed to demonstrate substantial prejudice from their previous counsel's failure to call these two witnesses. First, Olesya's mother's affidavit was admitted into evidence and considered by both the IJ and BIA, and there is no evidence that her live testimony would have differed from the statements in her affidavit. Moreover, as the BIA noted, her testimony "would not overcome the lack of a nexus between [Olesya's] experiences and one of the statutorily protected

---

establish a pattern or practice of persecution against a group of similarly situated persons. However, the cited regulation applies to claims for a well-founded fear of *future* persecution, not to past persecution. In their brief to the BIA, the Korneenkovs do not cite 8 C.F.R. § 208.13(b)(2)(iii) or discuss current Russian country conditions regarding mentally disabled adults. Because the Korneenkovs did not raise the argument to the BIA that they are entitled to asylum based on a well-founded fear of future persecution, this court does not have jurisdiction to address it. *See* 8 U.S.C. § 1252(d)(1).

grounds." Second, the IJ and BIA accepted as fact that the Korneenkovs were mentally disabled and admitted Dr. Reznik's evaluation report into evidence, and there is no evidence that Dr. Reznik's testimony on these issues would not have been duplicative. Additionally, the BIA explained that Dr. Reznik's "credentials do not establish that he is able to provide expert opinion and evidence as to the subject of mentally disabled individuals in Russia." We agree. Dr. Reznik's curriculum vitae indicates that he is a psychologist with extensive experience as a therapist with a specialty in therapeutic martial arts. His only experience with Russia came during June and July of 1993 when, as a Master's student, he conducted field research in Russia and Ukraine on former Soviet psychiatric facilities and changes in Russian psychology. He has not published, spoken, or received training on alleged persecution of the mentally disabled in Russia or on any contemporary hardships mentally disabled persons in Russia might face.

Accordingly, we agree with the BIA that the Korneenkovs failed to make a prima facie showing that, but for their previous counsel's failure to call Olesya's mother and Dr. Reznik, they would have been entitled to asylum. Thus, they have failed to demonstrate substantial prejudice, and we affirm the denial of their motion to reopen.

## IV. CONCLUSION

For the reasons herein, we AFFIRM the BIA's dismissal of the Korneenkovs' appeal and denial of their motion to remand.

AFFIRMED.